# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BLUEPRINT CAPITAL ADVISORS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF NEW JERSEY, *et al.*,<br><br>Defendants. | Civil Action No. 2:20-cv-07663-KM-ESK<br><br>Motion Date: November 2, 2020<br><br>**ELECTRONICALLY FILED** |

## DEFENDANT TIMOTHY WALSH'S
## MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS
## OR TO COMPEL ARBITRATION

Lucas C. Townsend
   LTownsend@gibsondunn.com
Chantale Fiebig (admitted *pro hac vice*)
   CFiebig@gibsondunn.com
Sarah Akhtar (admitted *pro hac vice*)
   SAkhtar@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Phone: 202.887.3731
Fax: 202.530.4254

*Attorneys for Defendant Timothy Walsh*

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 2

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT .................................................................................................................. 6

    I.    Plaintiff Fails To State Any Claim Against Walsh Under Rule 12(b)(6). ............. 6

        A.    Plaintiff Does Not Allege Any Facts That Plausibly Entitle It To Relief Against Walsh. ................................................................. 7

        B.    Plaintiff Fails To State A Claim For Discrimination Against Walsh Under Section 1981 .................................................................. 9

    II.    Plaintiff's Sole Claim Against Walsh Should Be Dismissed Because It Is Barred By The Statute Of Limitations. ............................................ 10

    III.    Plaintiff's Sole Claim Against Walsh Should Alternatively Be Dismissed Because It Is Subject To Arbitration Pursuant To The FAA. .......................... 12

        A.    The FAA Requires Blueprint to Arbitrate Claims Against Walsh. ......... 12

        B.    The Transaction Agreement's Arbitration Provision Is Enforceable. ....................................................................... 13

            1.    The Parties Entered A Valid Contractual Agreement When Walsh Contributed $75,000 To Blueprint. .................................... 13

            2.    Plaintiff's Claim Is Covered By The Agreement ......................... 15

CONCLUSION ............................................................................................................. 16

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).............................................................................................5, 8

*Ashford v. PricewaterhouseCoopers LLP,*
   954 F.3d 678 (4th Cir. 2020) ...............................................................................16

*AT&T Mobility, LLC v. Concepcion,*
   563 U.S. 333 (2011)...........................................................................................6, 13

*AT&T Tech., Inc. v. Commc'ns Workers of Am.,*
   475 U.S. 643 (1986)...............................................................................................6

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................................................................5, 6

*Brown v. Philip Morris Inc.,*
   250 F.3d 789 (3d Cir. 2001)...................................................................................9

*Campbell v. Gibb,*
   No. 10-6585, 2011 WL 2669965 (D.N.J. July 7, 2011) ......................................10

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC,*
   809 F.3d 746 (3d Cir. 2016).................................................................................13

*Citizens Bank v. Alafabco, Inc.,*
   539 U.S. 52 (2003)...............................................................................................12

*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media,*
   140 S. Ct. 1009 (2020)...........................................................................................9

*Contec Corp. v. Remote Solutions, Co., Ltd.,*
   398 F.3d 205 (2d Cir. 2005).................................................................................13

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (1985).............................................................................................16

*Duckett v. Williams,*
   86 F. Supp. 3d 268 (S.D.N.Y. 2015).....................................................................14

*EEOC v. Waffle House, Inc.,*
   534 U.S. 279 (2002).............................................................................................14

*Falat v. Cty. of Hunterdon,*
   No. 12-6804, 2013 WL 1163751 (D.N.J. Mar. 19, 2013) .................................5, 8

## TABLE OF AUTHORITIES
(continued)

Page

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)..............................................................................................13

*Geissler v. Atlantic City*,
198 F. Supp. 3d 389 (D.N.J. 2016) .......................................................................11

*Gen. Bldg. Contractors Ass'n v. Pennsylvania*,
458 U.S. 375 (1982)................................................................................................9

*Green v. State Bar of Texas*,
27 F.3d 1083 (5th Cir. 1994) .................................................................................9

*Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*,
372 F.2d 753 (2d Cir. 1967)..................................................................................14

*Lewis v. United Air Lines, Inc.*,
117 F. Supp. 2d 434 (D.N.J. 2000) .......................................................................11

*Marciano v. DCH Auto Grp.*,
14 F. Supp. 3d 322 (S.D.N.Y. 2014).....................................................................14

*Mildworm v. Ashcroft*,
200 F. Supp. 2d 171 (E.D.N.Y. 2002) ..................................................................16

*Mills v. Ethicon*,
406 F. Supp. 3d 363 (D.N.J. 2019) ....................................................................6, 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)............................................................................................12, 13

*Napier v. Thirty or More Unidentified Federal Agents, Emps., or Officers*,
855 F.2d 1080 (3d Cir. 1988)................................................................................10

*Nationwide Ins. Co. of Columbus, Ohio v. Patterson*,
953 F.2d 44 (3d Cir. 1991).....................................................................................6

*Ramsey v. Dintino*,
No. 05-5492, 2007 WL 979845 (D.N.J. Mar. 30, 2007) ......................................10

*River Brand Rice Mills, Inc. v. Latrobe Brewing Co.*,
305 N.Y. 36 (1953) ...............................................................................................15

*Smith v. Radwell Int'l*,
No. 06-cv-05682, 2007 WL 1814077 (D.N.J. June 20, 2007)..............................16

## TABLE OF AUTHORITIES
(continued)

Page

*Smith v. The Equitable*,
    27 F. Supp. 2d 565 (E.D. Pa. 1998) ........................................................................16

*Trippe Mfg. Co. v. Niles Audio Corp.*,
    401 F.3d 529 (3d Cir. 2005) .............................................................................6, 13

**Statutes**

9 U.S.C. § 2 ............................................................................................................12

9 U.S.C. § 4 ............................................................................................................12

42 U.S.C. § 1981 .......................................................................................................5

**Other Authorities**

AAA, *Commercial Arbitration Rules and Mediation Procedures* (Oct. 1, 2013),
    https://www.adr.org/sites/default/files/CommercialRules_Web.pdf ......................12

22 N.Y. Jur. 2d. Contracts...........................................................................................14

## INTRODUCTION

The complaint in this case alleges in vague and sweeping terms that several institutional defendants, including some of the largest investors on Wall Street, purportedly engaged in racial discrimination against Blueprint Capital Advisors, LLC ("Blueprint") by stealing its proprietary information and awarding it unfavorable contractual terms. But the complaint fails altogether to explain how individual defendant Timothy Walsh has allegedly engaged in any discrimination against Plaintiff. Nor could it. Far from discriminating against Blueprint, Walsh extended himself personally to *support* Plaintiff's business, including by making a contribution of $75,000 of his own financial resources in early rounds of fundraising because he viewed Jacob Walthour, Plaintiff's co-founder and Chief Executive Officer, as a friend. That Walsh has been named as a defendant at all is mystifying—he does not belong in this lawsuit alleging institutional discrimination and the claims against him should be dismissed.

Plaintiff's 55-page complaint includes only three fleeting references to Walsh, which say nothing about when, where, how, or why he was allegedly involved in the purported scheme. Plaintiff merely alleges that Walsh was an advisor to Blueprint and is currently an employee of Owl Rock Capital LP, Compl. ¶ 137 n.6, and that Walsh knew an individual named Donald Perrault, *id.* ¶ 111—all of which is obviously lawful conduct. The only allegation that could even remotely be construed to involve alleged wrongdoing is Plaintiff's assertion that Walsh worked with other defendants to allegedly funnel Blueprint's proprietary information to Blackrock. *Id.* ¶ 112. But Plaintiff does not point to any facts—including any specific act, information, recipient, timeframe, or purpose of the alleged transfer—to state a plausible claim that Plaintiff is entitled to any relief from Walsh for discrimination.

Furthermore, Plaintiff cannot sustain its Section 1981 claim—the only cause of action that is asserted against Walsh—because it is untimely and untethered to any allegation that Walsh held

any discriminatory animus or engaged in any discriminatory act.  Despite basing its Section 1981 claim on alleged discrimination in making or enforcing contracts, Plaintiff does not allege that Walsh was involved in the contractual negotiations at issue, that he was a party to the institutional contracts with New Jersey's Division of Investment ("DOI"), or that he could have in any way influenced the terms of those contracts as required to withstand dismissal.

In fact, the *only* relevant contract involving Walsh is based on his personal contribution of $75,000 in Blueprint to support its success.  Far from the animus allegedly shown by the institutional actors, Walsh, along with many others, dedicated his personal resources toward promoting Plaintiff's interests as an unpaid advisor and financer of the company.  To be included in this sensationalist complaint after being personally invested in Blueprint's success is the utmost betrayal.  Moreover, Walsh's contract with Blueprint memorializing his personal financial contribution reflects the parties' express agreement that "[a]ny controversy arising out of or relating to" Walsh's involvement with Blueprint "shall be settled by arbitration."  Declaration of Timothy Walsh ("Walsh Decl."), Ex. A § 12.05(a).  Under the arbitration rules that govern the agreement, Plaintiff's Section 1981 claim—and any dispute about whether it is subject to arbitration—must be submitted to an arbitrator.  The Court should therefore dismiss Plaintiff's claim against Walsh or, in the alternative, order arbitration, where Walsh also could pursue legal claims against Blueprint.

**BACKGROUND**

Blueprint is a hedge fund that entered into an agreement with the DOI to receive seed funding for its alternative investment strategies.  Compl. ¶¶ 36, 77–78, 128.  Plaintiff alleges that Blueprint developed the "FAIR" program and pitched it to the DOI in order to secure its investment.  *Id.* ¶¶ 7–8.  The FAIR program uses managed accounts or fund-of-one structures to

2

set a 1% management fee and 10% performance fee rather than the "standard-issue '2 and 20' hedge fund compensation structure" that typically charges a 2% management fee and 20% performance fee.  *Id.* ¶¶ 6, 39.  As part of the "due diligence process" for Blueprint's agreement with the DOI, Plaintiff "sent hundreds of pages of proprietary and confidential documents to New Jersey, as well as its external consultant Cliffwater" about its plans for the FAIR program.  *Id.* ¶ 60.  According to Plaintiff, Blueprint provided this information over the course of diligence that spanned many months.  *Id.* ¶¶ 60, 75.

In April 2016, Jacob Walthour sent Defendant McDonough, the Director of the DOI at the time, a letter raising concerns about delays in the diligence and approval process.  Compl. ¶ 82.  McDonough informed Walthour that New Jersey was in the process of implementing the FAIR program with Blackrock and explained that it was not required to also implement the program with Blueprint.  *Id.* ¶¶ 84–85.  After the DOI "formally announced" its decision to proceed with Blackrock in July 2016, Walthour asked how Defendant McDonough and others "could allow this to happen to a minority-owned firm" and allegedly learned of "New Jersey's discriminatory animus." *Id.* ¶¶ 86, 89, 92.  Blueprint "immediately conducted its own investigation" to determine how BlackRock created its FAIR program and allegedly "discovered that BlackRock, the State Defendants and Cliffwater conspired together to steal and/or misappropriate the Company's proprietary information, trade secrets and relationships in an effort to discriminatorily deny Blueprint the benefits of creating the FAIR program and doing business with DOI." *Id.* ¶¶ 96, 100.  Blueprint and the DOI nonetheless entered an amended agreement in January 2017, which identified the DOI's minimum capital commitment and required Blueprint to obtain the DOI's approval before making investments.  *Id.* ¶¶ 118, 122, 145.  Years later, Plaintiff filed this lawsuit alleging that the FAIR program was "stolen from it" and "handed . . . to Blackrock, the

exponentially larger company" with an "overwhelmingly white executive management and workforce." *Id.* ¶¶ 2, 5, 16.

None of the allegations regarding Plaintiff's negotiations with the DOI, Plaintiff's contractual agreement(s) with the DOI, or the DOI's contractual agreement(s) with Blackrock suggest that Walsh was involved in the negotiations or contracts in any way.  Plaintiff's only allegations in the entire complaint about Walsh are as follows:

- Walsh "is a former member of Blueprint's Board of Advisors," "currently a Managing Director at Owl Rock Capital LP," and "a resident of the state of Indiana." *Id.* ¶ 27; *see also id.* ¶ 137 n.6 (noting that Walsh joined Owl Rock as an employee).

- "According to representatives of Cliffwater and Blackrock, Defendant Walsh enjoyed a close personal relationship with Mr. Perrault, and Mr. Perrault's access to billions of dollars in DOI mandates, including the FAIR program, was largely due to his relationship with Defendants Walsh and McDonough." *Id.* ¶ 111.

- Walsh "had full access" to Blueprint's proprietary business information as a former advisor and "worked with Cliffwater and Blackrock to steal Blueprint's proprietary information and to assist Blackrock in developing their copy of the FAIR program." *Id.* ¶ 112.

Plaintiff does not provide any supporting facts about these allegations, including as to when Walsh was an advisor, allegedly stole the information, or assisted Blackrock; how he allegedly accessed proprietary information or funneled it to Blackrock; why Walsh would want to undermine the same company he was personally advising and financing; or when, how, or why Walsh's "personal relationship" with Perrault would have resulted in stealing the FAIR program.  Nor does Plaintiff draw any connection between those facts and its Section 1981 claim—the complaint does not contain *any* allegation that Walsh had discriminatory animus, engaged in any discriminatory act, entered the contract with the DOI, or even could have exercised any influence whatsoever over the terms of that contract.

Walsh's only contractual relationship with Plaintiff relates to Walsh's personal financial contribution to Blueprint, which he made—as did many others—in order to support Plaintiff's business.  On June 7, 2017, Plaintiff and Walsh executed a "Transaction Agreement" recognizing Walsh's $75,000 personal contribution to the company.  *See* Walsh Decl., Ex. A.  The Transaction Agreement not only memorialized Walsh's contribution, but also committed Walsh to maintaining confidentiality over any of Plaintiff's proprietary information.  *See id.* § 5.01.  And under the express terms of the Transaction Agreement, the parties agreed to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement or the breach thereof, that cannot be settled between the parties."  *Id.* § 12.05(a).

Ignoring this broad mandate to arbitrate any related controversy, Plaintiff inexplicably lumped Walsh into one of the ten claims before the Court, for alleged racial discrimination against Plaintiff under 42 U.S.C. § 1981.  *See* Compl. ¶¶ 198–201 (alleging discrimination in violation of Section 1981 "against all Defendants").

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint is required to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (citation omitted).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (citation and quotation marks omitted).  In addition, the complaint "must specifically allege *which* Defendants engaged in what wrongful conduct" to provide each defendant "fair notice of the allegations against them."  *Falat v. Cty. of Hunterdon*,

No. 12-6804, 2013 WL 1163751, *3 (D.N.J. Mar. 19, 2013) (citing *Twombly*, 550 U.S. at 555).

Where, as here, it is not possible to discern "the particular legal basis for each claim against each

defendant," the claims must be dismissed. *Mills v. Ethicon*, 406 F. Supp. 3d 363, 387 (D.N.J.

2019).

A complaint is also subject to dismissal under Rule 12(b)(6) when arbitration is required.

*See Nationwide Ins. Co. of Columbus, Ohio v. Patterson*, 953 F.2d 44, 45 n.1 (3d Cir. 1991)

("Dismissal . . . because the dispute is covered by an arbitration provision is generally effected

under Rule 12(b)(6)[.]").  The Supreme Court has deemed it "beyond dispute" that the Federal

Arbitration Act ("FAA") reflects a "national policy favoring arbitration." *AT&T Mobility, LLC v.

Concepcion*, 563 U.S. 333, 345–46 (2011).  When there is an agreement to arbitrate, and a dispute

falls within the scope of that agreement, an order to arbitrate the dispute pursuant to 9 U.S.C. § 4

"should not be denied unless it may be said with positive assurance that the arbitration clause is

not susceptible of an interpretation that covers the asserted dispute."  *See Trippe Mfg. Co. v. Niles

Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (quoting *AT&T Tech., Inc. v. Commc'ns Workers

of Am.*, 475 U.S. 643, 650 (1986)).

## ARGUMENT

### I.   Plaintiff Fails To State Any Claim Against Walsh Under Rule 12(b)(6).

Defendant Walsh has no place in Plaintiff's complaint alleging that some of the largest

actors on Wall Street engaged in an elaborate scheme to discriminate against Blueprint.  Indeed,

Plaintiff does not—and cannot—allege that Walsh engaged in any discriminatory conduct against

Blueprint whatsoever.  Plaintiff's sole assertion of alleged wrong-doing by Walsh—that he

"worked with Cliffwater and BlackRock to steal Blueprint's proprietary information," Compl.

¶ 112—is devoid of the facts necessary to infer Walsh's liability for any claim, let alone for discrimination in a contract that he could not make or enforce.

### A.   Plaintiff Does Not Allege Any Facts That Plausibly Entitle It To Relief Against Walsh.

Plaintiff's complaint does not come close to providing the factual specificity and facial plausibility required to state a claim under Rule 12(b)(6).  In fact, Plaintiff's own allegations throughout the complaint negate any inference that Walsh is liable for the misconduct alleged. Critically, the complaint does not allege that Walsh engaged in any acts of racial discrimination, as would be necessary to sustain his Section 1981 claim.  Rather, as to Walsh, it alleges only that he purportedly funneled proprietary information to BlackRock.  Compl. ¶ 111–12.  But even those allegations fail to plausibly allege wrongdoing by Walsh.

Far from plausibly alleging that Walsh misappropriated information relating to the FAIR program, Plaintiff repeatedly admits that it directly disclosed proprietary information about the program to the DOI and Cliffwater during the due diligence process.  *See, e.g.*, Compl. ¶ 9 ("Under the guise of performing 'due diligence' into Blueprint, the DOI, and its hand-selected consultant Cliffwater, demanded that Blueprint open its books and share hundreds of pages of research, financial models, vendor lists and investment strategies that comprised the FAIR program.  They were able to secure access to Blueprint's information by . . . guaranteeing that any information that Blueprint shared would be maintained in the strictest confidence."); *id.* ¶ 60 ("Blueprint sent hundreds of pages of proprietary and confidential documents to New Jersey, as well as its external consultant, Cliffwater, who had been retained to assist with the due diligence process over the coming months."); *id.* ¶ 104 ("[T]he State Defendants and Cliffwater had obtained unfettered access to Blueprint's confidential information and trade secrets based upon the false assurances that this information was 'required' to perform the due diligence for the investment that the DOI

supposedly was making into the Company, and that such information would remain confidential pursuant to New Jersey law"). Walsh had no alleged role in their contractual negotiations, in the diligence process, or in preparation of the materials at issue.

Plaintiff further alleges that "the State Defendants and Cliffwater had funneled its proprietary information to BlackRock employees, including but not limited to Donald Perrault, in exchange for employment consideration and employment assistance from Mr. Perrault and BlackRock." Compl. ¶ 105. Again, Walsh himself is not implicated in this allegation. Nor is he alleged to have had any role in any employment arrangement relating to Perrault that could plausibly support Plaintiff's theory of how information regarding the FAIR program reached BlackRock.

Plaintiff attempts to glide over these pleading deficiencies by alleging that "Defendant Walsh worked with Cliffwater and BlackRock." Compl. ¶ 112. But this pleading tactic of lumping Walsh in with unrelated defendants is impermissibly speculative, "forcing both the Defendants and the Court to guess who did what to whom when." *Mills*, 406 F. Supp. at 386–87 (citation omitted). In order to survive a motion to dismiss, Plaintiff must allege specific facts with respect to each named defendant that identify the alleged conduct that could conceivably give rise to liability. *See id.*; *Falat*, 2013 WL 1163751, at *3. Plaintiff has failed altogether to do that here, where he alleges nothing more than that Walsh knew Perrault, who also is not alleged to have engaged in any unlawful conduct. Without substantially more specificity regarding Walsh, his individual actions, or any instances of purported wrongdoing, the complaint plainly fails to allege even "a sheer possibility that [Walsh] acted unlawfully" and falls far "short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted). For this reason alone, Plaintiff's claim against Defendant Walsh should be dismissed.

**B.   Plaintiff Fails To State A Claim For Discrimination Against Walsh Under Section 1981.**

Plaintiff's only cause of action that purports to include Walsh also fails to meet the minimum pleading requirements under Rule 12(b)(6).   To state a claim under Section 1981, Plaintiff must allege (1) that it is a member of a racial minority; (2) intent to discriminate on the basis of race, and (3) discrimination concerning a protected activity under the statute, including the right to make and enforce contracts.   *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001).   "[P]laintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."   *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020).   In other words, here, Plaintiff must allege that it was discriminated against in making or enforcing a contract and that its minority ownership was the "but-for" cause of that discrimination.   *Id.*   Plaintiff's allegations against Walsh cannot satisfy these stringent requirements.

As an initial matter, Walsh was not a party to Blueprint's contract with the DOI and did not have any alleged agency relationship to be in a position to discriminate against Blueprint in making or enforcing the contract.   As a result, Plaintiff's Section 1981 claim against Walsh fails as a matter of law.   *See, e.g.*, *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 394–95 (1982) (explaining that a defendant is not liable under Section 1981 for the actions of a third party absent an agency relationship, even assuming *respondeat superior* applies); *Green v. State Bar of Texas*, 27 F.3d 1083, 1086–87 (5th Cir. 1994) (holding that plaintiff failed to state a Section 1981 claim because he did not allege that the defendant refused to contract with him or impeded his right to enforce a contract with others).   Moreover, Plaintiff does not allege that Walsh had any discriminatory intent or animus that led it to engage in any discrimination against Blueprint.   The complaint instead broadly alleges "New Jersey's discriminatory animus" based on statements

allegedly made by DOI employees.  Compl. ¶¶ 90–92.  Plaintiff does not attempt to connect Walsh to those statements or otherwise provide any fact to tie Walsh to its Section 1981 claim against the other Defendants.  Nor could it—far from discriminating against Plaintiff, Walsh's role as an unpaid advisor and personal financial contributor to Blueprint shows that Walsh had a vested interest in Plaintiff's success.

Plaintiff also fails to plausibly allege that Blueprint's minority ownership is the "but-for" cause of its alleged injuries from the DOI contract, *see Comcast*, 140 S. Ct. at 1019, or that Walsh played any role in *causing* those alleged injuries.  The DOI could have decided to pursue the FAIR program with BlackRock or allegedly offer it more favorable terms for any number of legitimate business reasons, including its reputation in the industry.  As Plaintiff alleges, Blackrock is "one of the largest financial services companies in the world"—"exponentially larger" than Blueprint— and among "the most powerful private . . . entities in the country."  Compl. ¶¶ 4–5, 15.  In any event, Plaintiff does not allege that Walsh denied it any right in making or enforcing the DOI contract or that he otherwise took any injurious action on account of Blueprint's minority interest. *See Comcast*, 140 S. Ct. at 1015; *Green*, 27 F.3d at 1086–87.  As a result, Plaintiff has failed to plead a but-for causal relationship between Walsh and Plaintiff's alleged injuries.

Because Plaintiff does not and cannot plead any facts alleging Walsh discriminated against Blueprint in making or enforcing Blueprint's contract with the DOI, the Court should dismiss its Section 1981 claim against Walsh with prejudice.  *See Campbell v. Gibb*, No. 10-6585, 2011 WL 2669965, *10 (D.N.J. July 7, 2011).

## II.   Plaintiff's Sole Claim Against Walsh Should Be Dismissed Because It Is Barred By The Statute Of Limitations.

Plaintiff's only cause of action against Walsh also fails at the threshold because it is barred by New Jersey's two-year statute of limitations.  Section 1981 claims alleging discrimination in

the formation or enforcement of a contract are governed by the forum state's statute of limitations for personal injury claims, which is two years in New Jersey.  *Napier v. Thirty or More Unidentified Federal Agents, Emps., or Officers*, 855 F.2d 1080, 1087 (3d Cir. 1988); *Ramsey v. Dintino*, No. 05-5492, 2007 WL 979845, *6–*7 (D.N.J. Mar. 30, 2007).  The limitations period begins to run when Plaintiff "knows or reasonably should know" of the injury.  *Lewis v. United Air Lines, Inc.*, 117 F. Supp. 2d 434, 438 (D.N.J. 2000).

Plaintiff's Section 1981 claim is premised on the denial of "equal terms and conditions of contract" that it knew or had reason to know of well over two years ago.  Compl. ¶ 199.  As alleged in the complaint, the DOI "formally announced" its decision to implement the FAIR program with BlackRock in July 2016, and "[i]t was at this point" that Blueprint learned of the state's alleged "discriminatory animus."  *Id.* ¶¶ 86, 90, 92.  Plaintiff alleges that it then "immediately conducted its own investigation" to determine how BlackRock created the FAIR program and "discovered that BlackRock, the State Defendants and Cliffwater conspired together to steal and/or misappropriate the Company's proprietary information, trade secrets and relationships in an effort to discriminatorily deny Blueprint the benefits of creating the FAIR program and doing business with DOI."  *Id.* ¶ 96, 100.  At the latest, Plaintiff knew of its claim by January 2017 when Plaintiff "agree[d] to the terms of the Amended DOI Agreement," including the "onerous terms" that allegedly "limited Blueprint's ability to invest the funds" and "provided the DOI with continued leverage over and ability to interfere with the Company."  *Id.* ¶¶ 122, 145.

Although Plaintiff's own allegations show it knew of its claim as early as July 2016, Plaintiff did not file its complaint until June 23, 2020.  That delay exceeds two years and bars Plaintiff's Section 1981 claim under New Jersey's statute of limitations.  Because amending the

complaint would not save Plaintiff's untimely claim, the Court should dismiss the claim with prejudice. *See Geissler v. Atlantic City*, 198 F. Supp. 3d 389, 402 (D.N.J. 2016).

**III.   Plaintiff's Sole Claim Against Walsh Should Alternatively Be Dismissed Because It Is Subject To Arbitration Pursuant To The FAA.**

Even if Plaintiff had stated a timely and well-pleaded claim, it would be subject to mandatory arbitration under the plain terms of Plaintiff's Transaction Agreement with Walsh. Pursuant to Section 12.05 of the Agreement, the parties agreed that "[a]ny controversy arising out of or relating to this Agreement or the breach thereof, that cannot be settled between the Parties, shall be settled by arbitration." Walsh Decl., Ex. A § 12.05(a). That agreement is valid because it was executed by both parties for due consideration, and it covers the Plaintiff's dispute with Walsh because it requires Walsh to keep confidential any proprietary Blueprint information to which he may have access. Accordingly, the Court should order arbitration of Plaintiff's Section 1981 claim against Walsh and dismiss it from the case pursuant to 9 U.S.C. § 4.

**A.   The FAA Requires Blueprint to Arbitrate Claims Against Walsh.**

The FAA requires the arbitration of any dispute covered by a valid arbitration agreement that arises out of transactions involving interstate commerce. *See* 9 U.S.C. §§ 2, 4. Out-of-state investments and commercial transactions like those regulated by the parties' Transaction Agreement indisputably involve interstate commerce for purposes of the FAA. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–58 (2003). In such cases, courts must "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Moreover, any dispute about whether arbitration is required must be submitted to an arbitrator under the American Association of Arbitration's ("AAA") commercial arbitration rules that are expressly incorporated into the Agreement. *See* Walsh Decl., Ex. A § 12.05(a). Rule 7(a)

of the AAA rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim."[1] "Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 763 (3d Cir. 2016) (collecting cases); *see also Contec Corp. v. Remote Solutions, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (holding that incorporation of Rule 7 of the AAA rules constitutes "clear and unmistakable evidence of the parties' intent" to delegate issues of arbitrability to an arbitrator).

### B.   The Transaction Agreement's Arbitration Provision Is Enforceable.

As the Supreme Court has repeatedly affirmed, the FAA reflects a "liberal federal policy" favoring the enforcement of arbitration agreements and provides that any agreement within its scope "shall be valid, irrevocable, and enforceable." *See, e.g.*, *Concepcion*, 563 U.S. at 339. Courts order arbitration if (1) a valid arbitration agreement exists and (2) the agreement encompasses the dispute at issue. *See Trippe*, 401 F.3d at 532. Any doubt as to the proper interpretation of the agreement "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses*, 460 U.S. at 24–25.

### 1.   The Parties Entered A Valid Contractual Agreement When Walsh Contributed $75,000 To Blueprint.

The Transaction Agreement recognizing Walsh's personal financial contribution to Blueprint is a valid and binding contract. The determination of whether a valid agreement exists

---

[1] AAA, *Commercial Arbitration Rules and Mediation Procedures* (Oct. 1, 2013), https://www.adr.org/sites/default/files/CommercialRules_Web.pdf.

is based on "ordinary state-law principles governing contract formation." *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). New York state law principles apply to the Transaction Agreement, which provides that "[a]ll disputes relating to this Agreement shall be governed by the laws of the State of New York without regard to choice of law or conflicts of law provisions thereof." Walsh Decl., Ex. A § 12.05(d). Under New York law, a valid contract requires consideration and the parties' mutual assent to be bound by its terms. 22 N.Y. Jur. 2d. Contracts § 29; *Duckett v. Williams*, 86 F. Supp. 3d 268, 272 (S.D.N.Y. 2015). The Transaction Agreement meets both of these requirements.

First, the Agreement was supported by adequate consideration. Walsh—along with many other individuals and investors—contributed $75,000 of his personal financial resources to the company and received .75% of its membership interests. Walsh Decl., Ex. A § 2.01(a)–(b). The Agreement also reflects the parties' mutual promises to arbitrate disputes. *See Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*, 372 F.2d 753, 758 (2d Cir. 1967) (holding that party's "promise to arbitrate was sufficient consideration to support [the other party's] promise to arbitrate"); *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) (compelling arbitration and finding that "the [Arbitration] Agreement by itself contains sufficient consideration because . . . it mutually binds both parties to submit claims exclusively to arbitration").

Second, both parties assented to the terms of the Agreement by executing it on June 7, 2017. Walsh Decl., Ex. A at 1, 16. Blueprint demonstrated its consent to be bound by the Agreement because it signed the agreement through Jacob Walthour, and Walsh demonstrated his consent to be bound by the Agreement by countersigning it. *Id.* at 16. Each sophisticated party was represented by separate counsel (or knowingly waived that opportunity) and agreed that the

terms shown reflect their entire agreement, superseding any prior understanding.  *See id.* §§ 12.04, 12.09(a).  Thus, there can be no dispute that a valid agreement was formed.

### 2.      Plaintiff's Claim Is Covered By The Agreement.

The Transaction Agreement's arbitration provision squarely encompasses any dispute Blueprint may assert against Walsh that arises out of Walsh's alleged access to Blueprint's proprietary information.  "[A]bsent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration."  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  Under the Transaction Agreement, "[a]ny controversy arising out of or relating to this Agreement or the breach thereof, that cannot be settled between the Parties, shall be settled by arbitration."  Walsh Decl., Ex. A § 12.05(a).  Plaintiff's only claim against Walsh falls within those broad and unambiguous terms.  *See, e.g.*, *River Brand Rice Mills, Inc. v. Latrobe Brewing Co.*, 305 N.Y. 36, 41 (1953) (holding that arbitration clause stating "[a]ny controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by arbitration" is clear and enforceable).

Plaintiff's Section 1981 claim against Walsh "aris[es] out of or relat[es]" to the Transaction Agreement because it implicates Blueprint's alleged proprietary information.  Walsh's only contact with Plaintiff is based on his personal financial contribution to the company under the terms of the Agreement.  Although the complaint does not provide any timeframe for its allegations against Walsh, it recognizes that Walsh is no longer a member of Blueprint's Board of Advisors and does not allege that Walsh held a paid or contractual advisory role in any event.  Compl. ¶ 27.  Any alleged access to proprietary information that Walsh would have since then, or any alleged requirement to keep the information confidential, would thus arise from the Transaction Agreement.  *See* Walsh Decl., Ex. A § 5.01 (prohibiting the disclosure of any confidential information concerning Plaintiff's "business, contacts, finances or operations," including any

"proprietary information" disclosed as a result of the relationship).  And the only exception to the arbitration provision—permitting a party to "retain his or its right to commence an action to obtain specific performance or other equitable relief from any court of competent jurisdiction," *id.* § 12.05(a)—does not apply because Plaintiff seeks damages for its Section 1981 claim.  Compl. ¶ 200–01.

Courts routinely dismiss discrimination claims subject to arbitration.  *See, e.g.*, *Ashford v. PricewaterhouseCoopers LLP*, 954 F.3d 678, 683–86 (4th Cir. 2020); *Mildworm v. Ashcroft*, 200 F. Supp. 2d 171, 176–80 (E.D.N.Y. 2002); *Smith v. The Equitable*, 27 F. Supp. 2d 565, 568–69 (E.D. Pa. 1998); *Smith v. Radwell Int'l*, No. 06-cv-05682, 2007 WL 1814077, at *2–*3 (D.N.J. June 20, 2007).  Because both requirements for arbitration are satisfied, the FAA "leaves no place for the exercise of discretion by a district court" and "instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  The Court should therefore order Plaintiff, pursuant to 9 U.S.C. § 4, to arbitrate its only claim against Walsh—if the Court concludes Plaintiff's threadbare allegations are sufficient to state a claim against him—and ensure the proper forum for enforcing Walsh's own legal rights under the Transaction Agreement.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Section 1981 claim against Walsh with prejudice or, alternatively, order it arbitrated.

Dated:  September 28, 2020                    By:  /s/ Lucas C. Townsend
                                              Lucas C. Townsend
                                                LTownsend@gibsondunn.com
                                              Chantale Fiebig (admitted *pro hac vice*)
                                                CFiebig@gibsondunn.com
                                              Sarah Akhtar (admitted *pro hac vice*)
                                                SAkhtar@gibsondunn.com
                                              GIBSON, DUNN & CRUTCHER LLP
                                              1050 Connecticut Avenue, N.W.
                                              Washington, DC 20036-5306
                                              Phone: 202.887.3731
                                              Fax: 202.530.4254

                                              *Attorneys for Defendant Timothy Walsh*