Lauren Tabaksblat
Michael J. Bowe
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Telephone: 212.209.4800
Facsimile: 212.938.2852
Email: ltabaksblat@brownrudnick.com
Email: mbowe@brownrudnick.com

Attorneys for Plaintiff
Blueprint Capital Advisors, LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BLUEPRINT CAPITAL ADVISORS, LLC, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 2:20-cv-07663-KM-ESK |
| ) | |
| vs. ) | |
| ) | |
| STATE OF NEW JERSEY, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS APPEAL OF THE MAGISTRATE JUDGE'S JANUARY 15, 2021 ORDER

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ..................................................................... 1

FACTUAL BACKGROUND........................................................................ 7

PROCEDURAL POSTURE ........................................................................ 11

LEGAL STANDARD................................................................................. 12

ARGUMENT ............................................................................................. 13

I.      THE ORDER IS CONTRARY TO ESTABLISHED LAW.............. 13

A.      The Magistrate Judge Recognized That Good Cause Has Not Been
        Established To Depart From The Presumptive Rules. ...................... 15

B.      The "Good Cause" Factors Militate Against A Stay.......................... 17

        1.      BCA Will Face Undue Hardship if Discovery Is Stayed......... 17

        2.      Proceeding With Discovery Will Not Unfairly
                Prejudice Defendants.................................................... 20

        3.      A Discovery Stay Will Not Substantially Simplify
                Issues in the Case. ....................................................... 21

        4.      The Early Stage Of This Proceeding Favors Denial of the
                Applications to Stay Discovery.............................................. 26

II.     THE MAGISTRATE JUDGE ERRONEOUSLY DETERMINED

THAT BCA'S  CONDUCT WARRANTS A STAY.................................. 26

CONCLUSION ........................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Gould Inc.*,
　739 F.2d 858 (3d Cir. 1984) ...................................................................27

*Adriana Castro, M.D., P.A. v. Sanofi Pasteur Inc.*,
　No. 11-7178 (JLL), 2012 WL 12918261 (D.N.J. Jul. 18, 2012).......................20

*Baer v. Chase*,
　392 F. 3d 609 (3d Cir. 2004) ..................................................................23

*Barone v. Public Service Electric and Gas Co.*,
　No. 18-cv-16569-KM-JBC, 2019 WL 3297230 (D.N.J. Jul. 22,
　2019) .................................................................................................27

*Cooper v. Southeastern PA Transp. Authority*,
　548 F.3d 296 (3d Cir. 2008) ...................................................................22

*CTF Hotel Holdings, Inc. v. Marriott Intern., Inc.*,
　381 F.3d 131 (3d Cir. 2004) ..............................................................19, 20

*Doe v. Hartford Life Acc. Ins. Co.*,
　237 F.R.D. 545 (D.N.J. 2006)..................................................................13

*Duffy v. Charles Schwab & Co.*,
　97 F. Supp. 2d 592 (D.N.J. 2000)............................................................25

*E.D. v. Sharkey*,
　928 F.3d 299 (3d Cir. 2019) ...................................................................22

*Eli Lilly and Co. v. Roussell Corp.*,
　23 F. Supp. 2d 460 (D.N.J. 1998)............................................................25

*Forrest v. Corzine*,
　757 F. Supp. 2d 473 (D.N.J. 2010).......................................................3, 18

*Galarza v. Whittle-Kinard*,
   No. 16-cv-00764 (ES)(SCM), 2017 WL 2198182 (D.N.J. May 18,
   2017) ...........................................................................................................4, 14

*Gerald Chamales Corp. v. Oki Data Americas, Inc.*,
   247 F.R.D. 453 (D.N.J. 2007)...............................................................................13

*Giles v. Phelan, Hallinan & Schmieg, L.L.P.*,
   901 F. Supp. 2d 509 (D.N.J. 2012).......................................................................25

*Gold v. Johns-Manville Sales Corp.*,
   723 F.2d 1068 (3d Cir. 1983) ........................................................................3, 6, 18

*Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers,
   Inc.*,
   87 F.R.D. 53 (E.D. Pa. 1980)...................................................................................3

*Haines v. Liggett Group Inc.*,
   975 F. 2d 81 (3d Cir. 1992) ....................................................................................13

*High 5 Games, LLC v. Marks*,
   No. 2:13-CV-07161-JMV-MF, 2018 WL 4462477 (D.N.J. Sept.
   18, 2018) .............................................................................................................3, 13

*Jones v. R.R. Donnelley & Sons Co.*,
   541 U.S. 369 (2004)................................................................................................24

*Kanshaw v. William Paterson University*,
   No. 18-11758, 2019 WL 4200706 (D.N.J. Sept. 5, 2019)...................................22

*Konopca v. Center for Excellence in Higher Education, Inc.*,
   No. 15-5340 (FLW)(DEA), 2016 WL 4644461 (D.N.J. Sept. 6,
   2016) .......................................................................................................................18

*Lopez v. Swyer*,
   62 N.J. 267 (1973) ..................................................................................................23

*Maher Terminals, LLC v. Port Auth. of New York & New Jersey*,
   No. CIV.A. 12-6090 KM, 2013 WL 2253532 (D.N.J. May 22,
   2013) ..............................................................................................................*passim*

*United States ex. rel. Marc Silver v. Omnicare, Inc.*,
   No. 11-1326, 2013 WL 12155426 (D.N.J. Nov. 15, 2013)................................16

*Morgan v. Quest Diagnostics Inc.*,
   No. 20-cv-00430-CCC-ESK, 2020 WL 7183503 (D.N.J. June 8,
   2020) ................................................................................................14, 18, 26

*Ohio Pub. Empls. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
   No: 4:08CV0160, 2013 WL 4517870 (N.D. Ohio Aug. 23, 2013)....................14

*Personalized User Model, L.L.P. v. Google, Inc.*,
   No. 09-525-LPS, 2012 WL 5379106 (D. Del. Oct. 31, 2012) ...........................20

*Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*,
   506 U.S. 139 (1993)..........................................................................................21

*Rhett v. Evans*,
   576 F. App'x. 85 (3d Cir. 2014) ......................................................................21

*Russell v. Richardson*,
   905 F.3d 239 (3d Cir. 2018) .............................................................................22

*S. Freedman and Co. Inc. v. Raab*,
   No. 06-3723 (RBK), 2008 WL 4534069 (D.N.J. Oct. 6, 2008) ....................3, 13

*Sharp v. Kean University*,
   153 F. Supp. 3d 669 (D.N.J. 2015)....................................................................22

*Snyder v. Pascack Valley Hospital*,
   303 F.3d 271 (3d Cir. 2002) .............................................................................16

*Spathos v. Smart Payment Plan, LLC*,
   No. 15-8014 (MAS) (DEA), 2016 WL 9211648 (D.N.J. Apr. 25,
   2016) .................................................................................................................26

*Udeen v. Subaru of America, Inc.*,
   378 F.Supp.3d 330 (D.N.J. 2019).......................................................3, 13, 15, 27

*WorldScape, Inc. v. Sails Capital Mgmt.*,
   No. 10-4207-RBK-KMW, 2012 WL 13028724 (D.N.J. Mar. 13,
   2012) .................................................................................................................27

## Statutes

18 U.S.C. § 1962.................................................................................................22

28 U.S.C. § 636(b)(1)(A) ................................................................................12, 13

42 U.S.C. § 1985 ...................................................................................................22

**Other Authorities**

Fed. R. Civ. P. 15 ...........................................................................................11, 12

Fed. R. Civ. P. 26(a)(1) ........................................................................................14

Fed. R. Civ. P. 26(c) .............................................................................................13

Fed. R. Civ. P.  26(f)(1) .....................................................................................3, 14

Fed. R. Civ. P. 72(a) .............................................................................................12

Fed. R. Civ. P. 72.1(c)(1) ......................................................................................12

New Jersey District Court Local Rule 72.1(c)(1) ................................................12

Plaintiff Blueprint Capital Advisors, LLC ("BCA" or "Plaintiff"), through its undersigned attorneys, respectfully submits this memorandum of law in support of its appeal of Magistrate Judge Kiel's January 15, 2021 Order, which stayed discovery.

## PRELIMINARY STATEMENT

This case involves serious claims of racial discrimination and exploitation by, among others, the New Jersey State Department of Investment (the "DOI"), and ongoing retaliation by the DOI and the New Jersey Governor (the "State Defendants") designed to silence, discredit, and punish the Plaintiff for deigning to publicly challenge this discrimination.  Plaintiff's Amended Complaint sets out this discrimination and retaliation in a detailed, specific, and evidentiary "who, what, when, where and why" narrative.  The retaliation is ongoing and "choking out" this Black-owned New Jersey investment manager by (a) denying it the ability to invest the capital allocated to it and thereby denying it the ability to earn fees, and (b) destroying its reputation and business relationships via an aggressive smear campaign led by Defendant Murphy's office and operatives.

The obvious objective of this ongoing discrimination and retaliation is to "disappear" Plaintiff from the investment community and public eye.  According to New Jersey State Senator Ronald Rice, "[w]hat happened to Blueprint and Mr. Walthour, over the course of the last four years, appears to be a modern-day

1

lynching and is a stain and a black eye on the State of New Jersey." Most hypocritically, the State Defendants are attempting this "lynching" while simultaneously touting at every opportunity their commitment to racial justice, equal opportunity, transparency, and accountability.

For example, in Defendant Murphy's recent January 12, 2021 State of New Jersey address, he proclaimed that "Justice Delayed is Justice Denied" while touting his commitment to racial justice and transparency. However, at the same time he was preparing and delivering those remarks, his administration was continuing its over 14-month stonewall of Plaintiff's public records requests concerning the discrimination that is the subject of this case. This blatant obstruction and abuse of authority has forced Plaintiff into a protracted and costly litigation to secure information to which it is entitled, and permitted Defendant Murphy's administration to avoid producing a single document related to this matter of utmost public interest.

Likewise, in this case, while Defendant Murphy was publicly touting his commitment to Black lives and businesses, his attorneys were arguing that the Black-owned business here should not be afforded the same discovery to which every litigant is entitled under the Federal Rules because motions to dismiss that might be filed in the future, based on arguments not yet articulated, might result in the entire case being dismissed on grounds not yet explained.

Of course, the Federal Rules of Civil Procedure and settled Third Circuit precedent say otherwise.  Federal Rule of Civil Procedure 26(f)(1) provides for no such automatic stay and mandates instead that discovery proceed "as soon as practicable."  Fed. R. Civ. P. 26(f)(1).  Accordingly, the courts in this Circuit have recognized a plaintiff's right to "expeditiously and diligently proceed to sustain [his] claim[s]." *Forrest v. Corzine*, 757 F. Supp. 2d 473, 479 (D.N.J. 2010); *Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980) ("Any Plaintiff in the federal courts enjoys the right to pursue his case and to vindicate his claim expeditiously.").  Indeed, echoing Defendant Murphy's declaration that "justice delayed is justice denied," the Third Circuit has held that denying a plaintiff's right to discovery constitutes "clear damage to the Plaintiff[]" and the "hardship of being forced to wait for an indefinite and, if recent experience is any guide, a lengthy time before their causes are heard." *Gold,*723 F.2d at 1075-76.

Accordingly, a stay "is an extraordinary remedy," *see S. Freedman and Co. Inc. v. Raab*, No. 06-3723 (RBK), 2008 WL 4534069, at *2 (D.N.J. Oct. 6, 2008), that can only be granted "on a showing of 'good cause' by the party requesting the stay." *High 5 Games, LLC v. Marks*, No. 2:13-CV-07161-JMV-MF, 2018 WL 4462477, at *2 (D.N.J. Sept. 18, 2018).  Notably, "the mere filing of a motion to dismiss" is not sufficient. *Udeen v. Subaru of America, Inc.*, 378 F.Supp.3d 330,

332 (D.N.J. 2019).  Nor is the argument that a motion may result in dismissal or otherwise render some or all discovery unnecessary.  *See Galarza v. Whittle-Kinard*, No. 16-cv-00764 (ES)(SCM), 2017 WL 2198182, at *3 (D.N.J. May 18, 2017); *Maher Terminals, LLC v. Port Auth. of New York & New Jersey*, No. CIV.A. 12-6090 KM, 2013 WL 2253532, at *3 (D.N.J. May 22, 2013).

In this action, the original complaint was filed on June 23, 2020, the Defendants filed motions to dismiss on September 28, 2020, and the parties subsequently submitted a joint proposed pre-trial order on October 1, 2020.  That joint proposed pre-trial order that all parties had negotiated did not propose any stay of discovery pending the resolution of the just- filed motions to dismiss, and rather provided for discovery to commence despite the filing of those motions.[1]

However, after Plaintiff filed an Amended Complaint adding claims and parties and remedying prior legal challenges, but before any new motions to dismiss were filed, at the rescheduled pre-trial conference the Magistrate Judge *sua sponte* suggested staying discovery until any potential future motions to dismiss were resolved.  In response, Defendants, now including Defendant Murphy, shifted

---

[1] Notwithstanding that the Defendants did not request a stay, the Magistrate Judge, upon learning that Plaintiff intended to file an Amended Complaint, did not enter the proposed pre-trial order and rescheduled the conference of October 6, 2020. *See* Dkt. No. 66.

their position and for the first time argued a stay was warranted.  When the Plaintiff objected, the Magistrate Judge asked for briefing.

In that briefing, Defendant Murphy and the other State Defendants did not even attempt to meet the criteria necessary to establish "good cause" as required under controlling Third Circuit precedent.  The other Defendants merely argued that "good cause" was established because their not-yet-filed motions to dismiss might dispose of the case on not yet articulated grounds even though the Third Circuit has made clear a stay is not warranted on that basis alone.

Nevertheless, the Magistrate Judge stayed discovery indefinitely without any finding of "good cause."  To the contrary, he held it was "premature" for him to even consider whether there was "good cause" because no motions to dismiss had been filed.  In sum, he imposed an automatic stay until Defendants could make motions to dismiss that might establish "good cause."  *See* Transcript of January 15, 2021 Hearing on Applications to Stay Discovery, attached hereto as Exhibit A, at 20:13-18.  This holding is completely untethered and contrary to the Federal Rules and controlling Third Circuit precedent.  That authority mandates that discovery commence "as soon as possible," provides no such automatic stay, and explicitly holds that a pending or potential future motion to dismiss is an insufficient basis to stay discovery.

Indeed, the Third Circuit has held that an automatic stay like that imposed by the Magistrate Judge is *per se* prejudicial to Plaintiff's right to "expeditiously" pursue its claim. *See Gold v. Johns-Manville Sales Corp.,* 723 F.2d 1068, 1075-76 (3d Cir. 1983) (denying request for a stay and stating: "[i]n these cases, the clear damage to the Plaintiffs is the hardship of being forced to wait for an indefinite and, if recent experience is any guide, a lengthy time before their causes are heard"). And it is particularly prejudicial here where the claims involve ongoing and irreparable harm to Plaintiff, the case has already been pending for seven months, and it will be many more months before the briefing on any motions to dismiss is complete, let alone resolved. At this moment, Defendant Murphy and the other State Defendants are continuing their retaliation against Plaintiff by denying it the ability to earn fees and disparaging its reputation in the investment management industry. There is a real risk that this campaign will achieve its objective of destroying Plaintiff. Here, justice delayed does not merely equate with justice denied, it equates with more injustice and more irreparable harm.

The Federal Rules of Civil Procedure and Third Circuit law should be applied to this case as equally as they are applied in every other civil case. Plaintiff should be entitled to prosecute its case "expeditiously" and without delay like other plaintiffs. The Governor of New Jersey, the State of New Jersey, and all the other Wall Street Defendants should have to litigate this case like all other

defendants are required to litigate theirs.  There should be no special burden imposed on this Black-owned business, and New Jersey, its governor, and the Wall Street Defendants should receive no special protections.  The Magistrate Judge's stay should be vacated, the Rule 26 Order entered, and discovery should commence.

## FACTUAL BACKGROUND

BCA is a Black-owned investment firm, founded by Jacob Walthour and Carrie Pickett, both investment professionals with decades of experience at prestigious financial service firms.  Amended Complaint ("Am. Compl.") ¶ 29. After years of exhaustive research, market analysis, and a large capital expenditure, BCA developed a proprietary model for public pension investments, called the FAIR program.  *Id.* at ¶¶ 31-38.  The FAIR program offered a radically different fee structure and cost saving mechanisms designed specifically to help struggling public pension programs like New Jersey's.  *Id.*  BCA went to great lengths to protect its proprietary information, shielding the majority of the details from public view, watermarking documents and presentations as confidential, and entering into non-disclosure and confidentiality agreements with employees, consultants, vendors, and associated third parties.  *Id.*

The racial abuse at issue in this case began in 2015 when the DOI, and its consultant Defendant Cliffwater, under the guise of conducting due diligence for

7

an anchor investment relationship with BCA, fraudulently misappropriated the

proprietary FAIR program and used it to launch the exact same program with

Defendant BlackRock in 2016.  (*Id.* at ¶¶ 48-102.)  BCA was told directly that the

firm could not get approved by the State's Investment Council because the firm

was Black-owned, and BCA later learned that this was the reason they launched

the program with BlackRock.  (*Id.* at ¶ 98.)

New Jersey's fraudulent misappropriation of its intellectual property and

business opportunity left BCA at risk of losing the other investment commitments

it had secured based on the promised New Jersey investment management

assignment.  BCA desperately attempted to mitigate the potential devastation this

would have inflicted on its business by trying to secure some investment

management business from New Jersey.  For an extraordinary 18 months, New

Jersey strung BCA along until ultimately agreeing to an investment management

arrangement.  In contrast, other investment management relationships were

historically, as well as during this period, consummated within 3-5 months of

initial negotiations, including Defendant Owl Rock's investment management

relationship, which was completed in approximately 3 months during this same

period.  *Id.* at ¶¶ 111-123.

Not only was BCA stonewalled for 18 months, it was forced to accept terms

that were blatantly unfavorable, noncommercial, and utterly disparate in

comparison to the terms provided to other similarly situated investment managers as a matter of course. *Id.* at ¶¶ 120-146. Among such discriminatory terms, BCA was forced to accept disparately low fees and payment terms that prevented it from earning fees based on allocated capital and instead limited fees to allocated capital that the DOI approved for deployment in specific proposed investments permitted it to invest. *Id.* at ¶¶ 117-120, 142-146.

Thereafter, for 32 months, and continuing today, the State Defendants have frustrated BCA's performance of that agreement by repeatedly denying it permission to invest allocated capital. *See id.* at ¶¶ 117-120, 126, 144, 147-169. This systemic refusal deprives BCA of its ability to earn any fees, renders the agreement illusory, and has hobbled the firm's ability to survive, let alone grow. *Id.* at ¶¶ 119, 147, 152, 157. In response to this abuse, BCA has repeatedly asked the DOI for investment guidelines, and the DOI has refused to provide them. *Id.* at ¶ 149. The DOI has also refused to say that it will ever approve any investment under any circumstances. *Id.* at ¶ 166. And it long ago stopped all meaningful, commercial, and professional communication.

Instead, the DOI has subjected BCA to extraordinary and punitive audits (*id.* at ¶¶ 170-171), launched, with Defendant Murphy's office and operatives, an aggressive campaign to disparage and discredit BCA in the market and public square, and actively contacted BCA's other clients and partners to try to get them

to cease doing business with BCA.  *See e.g.*, *id.* at ¶¶ 170-173, 185-192.  Among other abuses, in July 2020, DOI employees, including its director Defendant Corey Amon, contacted several of BCA's other investors in an effort to convince them to withdraw their investment with BCA, which would have served as pretext for the DOI to also withdraw.  *Id.* at ¶ 172.  Moreover, Governor Murphy and his deputies have instructed political operatives to discredit BCA's claims in various business, political, and social communities within New Jersey.  *Id.* at ¶¶ 186-192.

Likewise, in a further effort to conceal their original and ongoing misconduct and racial abuse, Governor Murphy and his staff have directed the DOI and others to ignore BCA's public records requests in violation of New Jersey's Open Records Act.  Over a 14-month period, the DOI has, in bad faith, requested extensions only to provide no response to BCA's requests.

The obvious objective of this sustained campaign is to teach this "uppity" Black firm its place, punish it for insisting it be treated fairly and equally, and send a message to others who would do business with New Jersey or deign to call out Defendant Murphy's administration for discriminatory conduct.  This hyper-aggressive and blatantly racist abuse has inflicted, and continues to inflict, brutal economic and reputational harm on this good New Jersey company, its founders, and its members and employees.

## PROCEDURAL POSTURE

After exhausting all efforts to develop a productive investment relationship with the DOI, in June 2020, BCA commenced this action seeking injunctive relief and other redress for the harm it has and continues to sustain.  (*See* Dkt. No. 1). On September 28, 2020, Defendants filed motions to dismiss.  (*See* Dkt. Nos. 54, 55, 56, 57, 58).  On October 1, 2020 the parties submitted a Joint Discovery Report setting forth a proposed discovery schedule.  Notably, no party requested a stay of discovery.  Dkt. No. 63.  Five days later, on October 5, 2020, BCA substituted its original counsel for Brown Rudnick LLP and the Constitutional Litigation and Advocacy Group, P.C.  (*See* Dkt. Nos. 64, 67, 68, 69, 70, 71).  At a status conference held the following day, BCA informed Magistrate Judge Kiel that it intended to file an amended complaint pursuant to Fed. R. Civ. P. 15.  In response, Magistrate Judge Kiel instituted a temporary stay of discovery pending BCA's filing of its Amended Complaint.  (*See* Dkt. No. 66).  BCA's Amended Complaint was filed on November 23, 2020.  (*See* Dkt. No. 78).

On December 2, 2020, all parties participated in a telephonic conference, during which Defendants, for the first time, sought a discovery stay pending resolution of their planned motions to dismiss.  In response, the Court directed the parties to submit briefing on the appropriateness of a discovery stay.  (*See* Dkt. No. 84).  At a hearing on January 15, 2021, Magistrate Judge Kiel determined that

Defendants' application to stay discovery was premature given that none of the Defendants had filed a motion to dismiss and therefore their arguments in favor of dismissal were speculative and could not establish good cause for a stay. (*See* Dkt. No. 110). Inexplicably, however, the Magistrate Judge maintained the discovery stay entered on October 6, 2020, despite arguments from BCA's counsel that discovery should immediately commence absent a showing of good cause from any of the Defendants. *Id.*; *see* Ex. A. BCA now files this appeal of the Order.[2] As further detailed below, the Order is contrary to the law established in this Circuit and the Federal Rules of Civil Procedure.

### LEGAL STANDARD

New Jersey District Court Civil Local Rule 72.1(c)(1), Federal Rule of Civil Procedure 72(a), and 28 U.S.C. § 636(b)(1)(A) grant litigants the right to appeal non-dispositive orders of magistrate judges to the presiding district judge. Pursuant to Local Rule 72.1(c)(1), "[a] [District] Judge shall consider the appeal and/or cross-appeal and set aside any portion of the Magistrate Judge's order found to be

---

[2] The New Jersey District Court Civil Local Rules provides that an appeal of the decision of a Magistrate Judge to a District Judge should be filed within 14-days from the date that the Magistrate Judge's decision "has been served with a copy of the Magistrate Judge's order." L. Civ. R. 72.1(c)(1)(A). Here, the Magistrate Judge issued and served the parties with the Order on January 15, 2021, and the court reporter certified the Transcript and made it available to Plaintiff on January 21, 2021. *See* Ex. A. In accordance with the Local Rules and the date of service, BCA timely filed the Notice of Appeal and this accompanying Memorandum in Support on January 29, 2021.

clearly erroneous or contrary to law." *See also* Fed. R. Civ. P. 72(a) ("[T]he district judge . . . must modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

A district court reviewing matters of law, such as those presented on this appeal, should reverse a magistrate judge's ruling that is "contrary to law." *Haines v. Liggett Group Inc.*, 975 F. 2d 81, 91 (3d Cir. 1992).  A decision is contrary to law if the magistrate judge has "misinterpreted or misapplied applicable law." *Doe v. Hartford Life Acc. Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006).

## ARGUMENT

## I.    THE ORDER IS CONTRARY TO ESTABLISHED LAW.

The "stay of a civil proceeding is an extraordinary remedy," *see S. Freedman and Co.,* 2008 WL 4534069, at *2, and "[p]ursuant to the Federal Rule of Civil Procedure 26(c), the Court may stay discovery only on a showing of 'good cause' by the party requesting the stay." *High 5 Games, LLC,* 2018 WL 4462477, at *2.  The mere filing of a motion to dismiss – or in this case, indication of an intention to file a future motion – does not stay discovery.  *Udeen*, 378 F. Supp. 3d at 332; *see also Gerald Chamales Corp. v. Oki Data Americas, Inc.*, 247 F.R.D.

453, 454 (D.N.J. 2007) ("[T]here is no requirement that discovery must be stayed pending a decision" on a dispositive motion); *Morgan v. Quest Diagnostics Inc.*, No. 20-cv-00430-CCC-ESK, 2020 WL 7183503, at *2 (D.N.J. June 8, 2020) (Kiel, J.) ("The last factor weights in favor of denying a stay because discovery is not complete and no trial date has been set."); *see also Maher Terminals*, 2013 WL 2253532, at *3 (finding that dispositive motions filed early in a litigation do not ordinarily warrant staying discovery).

Rather, the movant bears the burden to demonstrate "a clear case of hardship or inequity in being required to go forward." *See Galarza*, 2017 WL 2198182, at *1. Absent such a showing, discovery is presumed to be proper and must proceed expeditiously. *See* Fed. R. Civ. P. 26(f)(1) (no automatic stay imposed upon a filing of motion to dismiss; rather, the parties are directed to confer on a discovery schedule "as soon as practicable").[3]

---

[3] Courts also regularly hold that the filing of an amended complaint triggers immediate discovery. *See, e.g.*, *Ohio Pub. Empls. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, No: 4:08CV0160, 2013 WL 4517870, at *2 (N.D. Ohio Aug. 23, 2013) (addressing appeal of order to begin discovery immediately upon filing of Third Amended Complaint).

Rule 26 also anticipates discovery immediately after the filing of a complaint, requiring that certain key information be provided "without awaiting a discovery request." *See* Fed. R. Civ. P. 26(a)(1). This rule was adopted "to accelerate the exchange of basic information about the case." *Id.* at advisory committee's note to 1993 amendment.

Applying these standards, the Order is erroneous as a matter of law.  Despite holding that it was premature to determine whether "good cause" exists to stay discovery on this record – and without *any* analysis of the factors relevant to the good cause determination – the Magistrate Judge entered an Order requiring BCA to wait more than two months until Defendants' motions are fully briefed, in direct contravention of the presumptive rules.  Because the Magistrate Judge's decision incorrectly imposed a discovery stay without the required demonstration of good cause, this Court should reverse the Order and direct the parties to proceed with discovery unless and until Defendants can meet their burden to justify a stay.

### A.     The Magistrate Judge Recognized That Good Cause Has Not Been Established To Depart From The Presumptive Rules.

Stays of discovery are disfavored, and Defendants therefore bear a heavy burden to demonstrate good cause for a stay.  *See Maher Terminals,* 2013 WL 2253532, at *3.  In determining whether a party has met its burden, courts in this district evaluate four key factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set."  *Udeen*, 378 F. Supp. 3d at 332.  "[T]he burden rests squarely on Defendants to make such a

showing because a stay of discovery is 'not preferred.'" *Maher Terminals,* 2013 WL 2253532, at *3.

Instead of analyzing whether Defendants had met their burden to establish good cause under the foregoing factors, the Magistrate Judge summarily stayed discovery based on motions that have not even been filed, and which will not be fully briefed for months. He did so despite recognizing that Defendants have not yet established good cause to justify a departure from the presumptive rules: "I am not making a decision on the stay. . . *where we are procedurally is premature to make the decision on the stay*." Ex. A, at 20:14-18 (emphasis added).[4]

The Order subverts the well-settled law in this district which presumes that discovery shall proceed until such a showing is made.[5] If, at a later date, the Court

---

[4]     To the extent Magistrate Judge Kiel considered Defendants' motions to dismiss the original complaint in this action (Ex. A at 16:15-19), this too was improper. Any motions to dismiss filed prior to the filing of the Amended Complaint are now moot. *See Snyder v. Pascack Valley Hospital,* 303 F.3d 271, 276 (3d Cir. 2002) ("An amended complaint supersedes the original version in providing the blueprint for the future course of the lawsuit."); *United States ex. rel. Marc Silver v. Omnicare, Inc.*, No. 11-1326, 2013 WL 12155426, at *1 (D.N.J. Nov. 15, 2013) ("The third amended complaint supersedes any prior complaint and renders the motions to dismiss and attendant responses and replies moot.").

[5]     To the contrary, the Magistrate Judge appears to shift the burden to BCA to demonstrate entitlement to discovery at this juncture in direct contravention of the federal rules, directing BCA to file a motion for preliminary injunction as a mechanism to obtain discovery that it is plainly entitled to under the federal rules. Ex. A at 20:19-22 ("You can always make an application for preliminary relief, but that would be [for] Judge McNulty. And as part of that, you can ask for expedited discovery targeted to that – targeted to that application.").

16

determines Defendants have met their burden, a stay can be entered at that point. The Court's decision in *Kiley v. Tumino's Towing, Inc.*, is instructive. In *Kiley*, the Court denied Defendants' motions to stay pending the filing and resolution of dispositive motions. While the *Kiley* court found that the party resisting discovery had not shown good cause at that time, the Court acknowledged that a request for a stay could be renewed after relevant briefing was complete. *See* No. 2:18-CV-3165-JMV-SCM, 2019 WL 2432121, at *2 (D.N.J. June 10, 2019). Applying the same reasoning, to the extent Defendants' future motions to dismiss raise issues that the Magistrate Judge determines after review may warrant a stay, the proper course would be to assess the appropriateness of the stay at that juncture. But under the Order, Plaintiff must wait months before even having the stay request fully considered. This approach is the precise opposite of what the rules dictate and erroneously enables Defendants to needlessly prolong this litigation and the ongoing harm that continues to be inflicted on BCA.

## B. The "Good Cause" Factors Militate Against A Stay.

Moreover, even if the Magistrate Judge had considered the good cause factors at this juncture – which he did not – those factors all militate against a stay here.

### 1. BCA Will Face Undue Hardship if Discovery Is Stayed.

The first factor clearly weighs against a stay of discovery because BCA would be unduly prejudiced by any further delay in addressing Defendants' historic and ongoing misconduct.  Courts in this Circuit have recognized a plaintiff's right to "diligently proceed to sustain [his] claim[s]."  *Forrest v. Corzine*, 757 F. Supp. 2d 473, 479 (D.N.J. 2010) (denying discovery stay); *accord Gold,* 723 F.2d at 1075-76 (denying request for a stay and stating: "[i]n these cases, the clear damage to the Plaintiffs is the hardship of being forced to wait for an indefinite and, if recent experience is any guide, a lengthy time before their causes are heard").

Consistent with these principles, courts routinely hold that a delay in the resolution of a party's claim constitutes undue prejudice that warrants denial of a request for a stay.  In *Morgan v. Quest Diagnostics Inc.*, Judge Kiel denied the defendant's motion to stay discovery recognizing that the attendant delay constitutes an undue hardship to plaintiff: "[G]iven the judicial emergency in this District, the resolution of the Motion to Dismiss may be many months away. Accordingly, the delay in proceeding with discovery would unduly prejudice Plaintiff and present a clear tactical disadvantage."  2020 WL 7183503, at *2 (Kiel, J.); *see Gold*, 723 F.2d at 1076 (noting that when facing a stay, "the clear damage to the Plaintiffs is the hardship of being forced to waiting for an indefinite and . . . lengthy time before their causes are heard"); *Konopca v. Center for*

18

*Excellence in Higher Education, Inc.*, No. 15-5340 (FLW)(DEA), 2016 WL

4644461, at *2 (D.N.J. Sept. 6, 2016) (denying a stay after noting that "the delay

here could be substantial"); *see also CTF Hotel Holdings, Inc. v. Marriott Intern.,*

*Inc.*, 381 F.3d 131, 135 (3d Cir. 2004) (denying stay of litigation and noting that

"[t]here is, however, no way of foretelling how long [Plaintiff]'s suit must remain

in limbo").

This reasoning applies with equal force here. As the Magistrate Judge

recognized, Defendants have not even filed motions to dismiss the Amended

Complaint at this juncture, and pursuant to this Court's scheduling order dated

January 5, 2021 (Dkt. No. 107), those motions will not be fully briefed until March

31, 2021, and will likely not be decided until months thereafter. Under these

circumstances, the law is clear that a stay is inappropriate and prejudicial.

The hardship to BCA resulting from such a lengthy delay would be

particularly prejudicial in light of Defendants' ongoing and escalating wrongdoing.

Although Defendants' motions to stay attempt to recast BCA's allegations as

solely historic misconduct dating back to 2015 and 2016, the Amended Complaint

details the State Defendants' ongoing racial abuses and disparate treatment of BCA

(Am. Compl. ¶¶ 147-173), their continuous campaign to publicly disparage BCA

and discredit its claims (*id.* ¶¶ 187-192 ), their efforts to tortiously interfere with

BCA's relationships with other investors and critical market constituents (*id.*

¶¶ 131-132, 172), and their attempts to manufacture a pretext to redeem their investment with BCA and terminate the parties' relationship (*id.* ¶172).  Moreover, the Amended Complaint details the ongoing support Defendants Cliffwater, Owl Rock, BlackRock, and Walsh have provided to the State Defendants, and the ways in which each Defendant continues to this day to profit from the misappropriation of BCA's proprietary FAIR program and its ongoing exploitation.  (Am. Compl. ¶¶ 62, 99-102, 122, 170-171).  Left unchecked for months while the motions to dismiss are pending, Defendants' egregious and escalating pattern of discrimination would continue to materially harm BCA.

      2.    <u>Proceeding With Discovery Will Not Unfairly</u> <u>Prejudice</u>
            <u>Defendants.</u>

In seeking a stay, the movant "must state a clear countervailing interest to abridge a party's right to litigate." *CTF Hotel Holdings, Inc.*, 381 F.3d at 139.  As set forth above, the mere filing of a motion to dismiss does not justify a stay of discovery.  *See supra*, at 13.[6]  Moreover, the cost, resources, and distraction associated with discovery that may later be determined to be unnecessary does not constitute good cause to depart from the presumptive rules.  *See Maher Terminals*, 2013 WL 225352, at *3; *Adriana Castro, M.D., P.A. v. Sanofi Pasteur Inc.*, No.

---

[6]    Consistent with this presumptive rule, not a single Defendant requested a complete stay of discovery in the Joint Discovery Report submitted to this Court in October 2020.  (Dkt. No. 63).

11-7178 (JLL), 2012 WL 12918261, at *2 (D.N.J. Jul. 18, 2012) (rejecting "[Defendants] argument that 'failure to grant a stay could impose significant, needless, and asymmetric costs'"); *see also Personalized User Model, L.L.P. v. Google, Inc.*, No. 09-525-LPS, 2012 WL 5379106, at *2 (D. Del. Oct. 31, 2012) (denying stay and noting that the moving party had made no showing of undue hardship when the only prejudice it argued it would incur in proceeding was added litigation cost).

      3.    <u>A Discovery Stay Will Not Substantially Simplify Issues in the Case.</u>

In any event, contrary to Defendants' conjectures, BCA's claims are not properly resolved at the pleading stage.  Rather, the parties' claims and defenses in this action, including the immunity and statute of limitations defenses, are fact-intensive and require discovery.

As an initial matter, it is well established that sovereign and qualified immunity defenses do not apply to BCA's claim against Governor Murphy and the State Defendants for injunctive relief.  *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145-46 (1993) ("[S]uits seeking prospective, but not compensatory or other retrospective relief, may be brought against state officials in federal court challenging the constitutionality of official conduct enforcing state law.") (*citing Ex Parte Young*, 209 U.S. 123 (1908)); *Rhett v. Evans*, 576 F. App'x. 85, 88 n.2 (3d Cir. 2014) ("Suits for injunctive relief

21

against state officials brought to end ongoing violations of federal law are not

barred by the Eleventh Amendment.").

However, even if sovereign and qualified immunity was a defense to each of

BCA's claims – which is not the case – the burden rests on the State Defendants to

establish that they are entitled to either sovereign or qualified immunity.  *See E.D.*

*v. Sharkey,* 928 F.3d 299, 306 (3d Cir. 2019); *Cooper v. Southeastern PA Transp.*

*Authority*, 548 F.3d 296, 311 (3d Cir. 2008).  Determination of a parties'

entitlement to sovereign and qualified immunity requires courts to engage in a fact

intensive analysis, which necessitates discovery, and should not be decided at the

pleadings stage.  *See Russell v. Richardson*, 905 F.3d 239, 253 (3d Cir. 2018)

(affirming the district court's holding that the case was "too fact sensitive . . . to

make a [qualified immunity] ruling . . . without discovery."); *Kanshaw v. William*

*Paterson University*, No. 18-11758, 2019 WL 4200706, at *3 (D.N.J. Sept. 5,

2019) ("[T]he qualified immunity analysis involves a fact-intensive inquiry that is

generally ill-suited for resolution at the pleadings stage.") (citations omitted); *see*

*also Sharp v. Kean University*, 153 F. Supp. 3d 669, 675 n.3 (D.N.J. 2015)

("Because there has been no discovery to this date, the Court will not address

[defendant]'s sovereign immunity defense.").

Defendants' putative statute of limitations defenses suffer from the same

infirmities.  First, several Defendants argue that BCA's 42 U.S.C. § 1985, RICO,

and aiding and abetting RICO claims first filed on November 23, 2020 are time-barred under the applicable four-year statute of limitations, because the Amended Complaint alleges that BCA first learned of the DOI's decision to misappropriate its proprietary FAIR program in April 2016.  However, as set forth in the Amended Complaint, while Defendants McDonough and MacDonald first informed BCA that the DOI elected not to pursue the FAIR mandate with BCA in April 2016, BCA did not learn that the DOI and BlackRock misappropriated BCA's proprietary program until July 28, 2016, when the DOI announced in a press release its proposed BlackRock investment, identical in name and elements to BCA's proposed FAIR program.  (Am. Compl. ¶¶ 101-102).  Under New Jersey law, BCA's claims accrue upon discovery of Defendants' misappropriation and wrongdoing.  *See Baer v. Chase*, 392 F. 3d 609, 622 (3d Cir. 2004) ("In New Jersey as elsewhere 'the discovery rule postpones the commencement of a cause of action until a Plaintiff knows, or should have known, of facts which establish that an injury has occurred, and that fault for that injury can be attributed to another.'") (citation omitted).  Therefore, BCA's claims did not accrue until July 2016 and were thus timely commenced within the four-year statute of limitations period.  At a minimum, discovery is required to resolve factual disputes concerning when BCA first learned of Defendants' misappropriation and other wrongdoing to trigger accrual.  *See, e.g.*, *Lopez v. Swyer*, 62 N.J. 267, 275-76 (1973) (holding that

"[a]ll relevant facts and circumstances should be considered" when determining whether the plaintiff is entitled to the benefit of the discovery rule).

With respect to the State Defendants' claims that BCA's § 1981 and § 1983 claims are time-barred under the applicable two-year statute of limitations, (*see* Dkt. No. 55-1), these arguments are predicated on the incorrect premise that BCA's § 1981 and § 1983 claims arise solely from the formation of the contract which is governed by a two-year statute. Here, the Amended Complaint details Defendants' ongoing discrimination and retaliation in connection with the enforcement and performance of the parties' investment agreement, which continues to this day (Am. Compl. ¶¶ 147-173; Count Four, ¶¶ 216-219; Count Five, ¶¶ 221-225), and are governed by a longer, four-year limitations period. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (holding that § 1981 cause of action was governed by federal "catch-all" four-year statute of limitations because the claim was based on § 1981(b), which was codified in 1991 and governs conduct after the formation of a contract).

The remainder of Defendants' arguments likewise do not warrant dismissal at the pleadings stage prior to discovery. For example, Defendants Owl Rock and BlackRock both argue that BCA's unfair competition claim must be dismissed due to the lack of a formal contract or relationship between the parties. (*See* BlackRock's Application, Dkt. No. 91, at 8; Owl Rock's Application, Dkt. No. 93,

24

at 8). Yet, it is well-settled under New Jersey law, that no such formal relationship is required. Rather, to state a claim for unfair competition, a plaintiff need only demonstrate misappropriation or tortious interference with one's property by another. *See Eli Lilly and Co. v. Roussell Corp.*, 23 F. Supp. 2d 460, 494 (D.N.J. 1998); *see also Duffy v. Charles Schwab & Co.*, 97 F. Supp. 2d 592, 600 (D.N.J. 2000) ("[I]n essence, unfair competition is a business tort. Generally, it consists of the misappropriation of one's property by another — or property which has some sort of commercial or pecuniary value."). The Amended Complaint adequately pleads that Defendants Owl Rock and BlackRock misappropriated BCA's proprietary FAIR program and opportunity with the DOI for their own benefit. (*See* Am. Compl. ¶¶ 85, 88-90, 100-102). At a minimum, discovery is warranted concerning the proprietary nature of BCA's FAIR program and its value as BCA's property.

Additionally, several Defendants challenge the sufficiency of BCA's pleadings. (*See e.g.*, Owl Rock's Application, Dkt. No. 93, at 7-8; Cliffwater's Application, Dkt. No. 95, at 2). These arguments ignore the 60 pages of factual allegations set forth in the Amended Complaint, which are more than sufficient at the pleadings stage. (*See* Am. Compl. ¶¶ 29-194). Moreover, even assuming *arguendo* that the Court finds certain facts require additional pleading, the appropriate course would be to grant BCA leave to address these deficiencies, not

25

dismissal.  *See Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 533 (D.N.J. 2012) (granting leave to file a second amended complaint to correct noted deficiencies).

4.      The Early Stage Of This Proceeding Favors Denial of the <u>Applications to Stay Discovery.</u>

The fact that this case is still in its infancy and no trial date has been set, further militates in favor of the denial of Defendants' applications to stay.  *See Morgan*, 2020 WL 7183503, at *2 (Kiel, J.) ("The last factor weights in favor of denying a stay because discovery is not complete and no trial date has been set."); *see also Maher Terminals*, 2013 WL 2253532, at *3 (finding that dispositive motions filed early in a litigation do not ordinarily warrant staying discovery).[7]

## II.     THE MAGISTRATE JUDGE ERRONEOUSLY DETERMINED THAT BCA'S CONDUCT WARRANTS A STAY.

Lastly, the Magistrate Judge erroneously credited Defendants' argument that the time that transpired between the misappropriation of BCA's proprietary information and the commencement of this action supports the requested stay.  *See*

---

[7]      Further, the interests of judicial efficiency favor proceeding with discovery now. This Court has long recognized that discovery stays are disfavored "'because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.'" *Spathos v. Smart Payment Plan, LLC*, No. 15-8014 (MAS) (DEA), 2016 WL 9211648, at *1 (D.N.J. Apr. 25, 2016) (internal citation omitted).

Ex. A, at 17:25-18:8 ("But, Mr. Bowe, I have to take into consideration all of the facts, and there is – there is the issue that your client may have waited a period of time . . . It seems like this thing has brewing for a number of years, and that's a consideration in my mind as well."). As an initial matter, the timing of the filing of a complaint or an amendment as of right is not one of the factors considered in determining whether good cause exists to stay discovery. *See Udeen*, 378 F. Supp. 3d at 332.[8]

The Order is also erroneous in so far as it concludes that all the conduct is historic and thus any additional delay would not prejudice BCA. As detailed in the Amended Complaint, BCA seeks injunctive relief and redress for Defendants' ongoing misconduct which continues to this day. Under these circumstances, time is of the essence. In any event, far from avoiding the overt abuse it has been and continues to be subjected to, BCA has engaged over the past four years in a diligent effort to resolve this dispute and find a path forward without litigation. It

---

[8]     Further, in cases of amendment, the mere passage of time between filing the original complaint and amendment does not constitute undue delay. *See Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) ("The passage of time, without more, does not require that a motion to amend a complaint be denied . . ."); *Barone v. Public Service Electric and Gas Co.*, No. 18-cv-16569-KM-JBC, 2019 WL 3297230, at *3 (D.N.J. Jul. 22, 2019) (McNulty, J.) (citing *Adams* and allowing motion to amend); *WorldScape, Inc. v. Sails Capital Mgmt.*, No. 10-4207-RBK-KMW, 2012 WL 13028724, at *2 (D.N.J. Mar. 13, 2012) ("The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay, and delay alone is insufficient ground to deny leave to amend.").

was only when its four-year long exhaustive efforts to address the ongoing disparate treatment and retaliation failed that BCA was left with no choice but to commence this action.  BCA should not be penalized and forced to wait even longer to pursue its claims because it attempted first to work cooperatively toward a mutually beneficial result.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court reverse the portion of the Magistrate Judge's Order extending the discovery stay and allow discovery in this action pending the Magistrate Judge's disposition of Defendants' applications to stay.

Dated: January 29, 2021

Respectfully submitted,

**BROWN RUDNICK LLP**

By: _Lauren Tabaksblat_
    Lauren Tabaksblat
    (Bar No. 037322008)
    Michael J. Bowe (admitted *pro hac vice*)
    7 Times Square
    New York, New York 10036
    Telephone: 212.209-4800
    Facsimile:  212 209-4801
    ltabaksblat@brownrudnick.com
    mbowe@brownrudnick.com

28

Rebecca M. Lecaroz (admitted *pro hac vice*)
One Financial Center
Boston, Massachusetts 02111
rlecaroz@brownrudnick.com

Jay Alan Sekulow (admitted *pro hac vice*)
Stuart J. Roth (admitted *pro hac vice*)
Jordan A. Sekulow (*pro hac vice* forthcoming)
Benjamin P. Sisney (*pro hac vice* forthcoming)
Constitutional Litigation and Advocacy Group, P.C.
1701 Pennsylvania Ave, NW, Suite 200
Washington, DC 20006
(202)248-5407
jsekulow@claglaw.com
sroth@claglaw.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 29, 2021, I caused copies of the foregoing Memorandum in Support of Appeal of Magistrate Judge Kiel's January 15, 2021 Order to be served through the Court's ECF system upon counsel of record, and caused copies to be mailed to all newly added parties.

Dated: January 29, 2021

Lauren Tabaksblat