**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| BLUEPRINT CAPITAL ADVISORS, LLC,<br><br>                    Plaintiff,<br><br>      v.<br><br>PHILIP MURPHY, in his official capacity as Governor of the State of New Jersey, STATE OF NEW JERSEY DIVISION OF INVESTMENT, BLACKROCK, INC., BLACKROCK ALTERNATIVE ADVISORS, CLIFFWATER, LLC, TIMOTHY WALSH, OWL ROCK CAPITAL CORPORATION, SAMANTHA ROSENSTOCK, JASON MACDONALD, CHRISTOPHER MCDONOUGH, COREY AMON, DINI AJMANI, DERRICK GREENE, GEORGE HELMY, and MATTHEW PLATKIN, in their individual and professional capacities,<br><br>                 Defendants. | **Civil Action No. 20-07663 (JXN) (ESK)**<br><br><br><br>**OPINION** |

**NEALS**, District Judge

      This matter comes before the Court on the Motion of Defendant Owl Rock Capital Corporation ("Owl Rock" or "Defendant"), for Partial Reconsideration (ECF No. 205) of the Court's December 23, 2022, Opinion (the "Opinion") and Order (ECF Nos. 201, 202). After carefully reviewing all submissions and considering the Motion without oral argument, pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b), for the reasons that follow, Defendant's Motion is **DENIED**.

## I.   BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff Blueprint Capital Advisors LLC  ("BCA" or "Plaintiff") initiated this action on
June 23, 2020. (ECF No. 1). On November 23, 2020, Plaintiff filed an Amended Complaint
alleging additional causes of actions and naming several additional parties, including Owl Rock.
(ECF No. 78 ("Am. Compl.").) In the Amended Complaint, Plaintiff alleges that it was
discriminated against by the New Jersey Division of Investment ("DOI"), which allegedly
conspired with several public officials and private actors to appropriate its proprietary investment
model (the "FAIR Program") and implement it with a different investment firm. (*See generally*,
Am. Compl.) With respect to Owl Rock specifically, Plaintiff alleged that Defendant Timothy
Walsh was secretly working for Owl Rock in 2015 in violation of his and Owl Rock's ethical and
disclosure obligations (*Id*. ¶ 60), traded his insider information about BCA's FAIR Program, and
his relationship with BlackRock to secure a seed investment for Owl Rock (*id*. at ¶ 62) and was
subsequently rewarded by Owl Rock with a position as managing director. (*See id*. ¶¶ 60, 62, 73,
102, 122, 145.) Plaintiff asserted four claims against Owl Rock in the Amended Complaint: Aiding
and Abetting RICO (Count Thirteen), Aiding and Abetting Fraud (Count Fifteen), Unfair
Competition (Count Sixteen), and Civil Conspiracy (Count Twenty-two). (*See id*.)

On February 15, 2021, Owl Rock moved to dismiss all claims against it, including
Plaintiff's RICO claim, on the grounds that it was time-barred. (*See* ECF No. 129-1, at 11-12.) On
October 28, 2022, the Court heard Oral Arguments on defendants' motions,[2] during which time

---

[1] The Court writes primarily for the parties and summarizes the relevant procedural history. The background is drawn
from the parties' papers and from the Opinion, *see, Blueprint Cap. Advisors, LLC v. Murphy*, No.
220CV07663JXNESK, 2022 WL 17887229 (D.N.J. Dec. 23, 2022). Direct citations are mostly omitted.

[2] Plaintiff's Appeals of the Magistrate Judge's decisions (ECF Nos. 115, 170); Defendants Timothy Walsh's Motion
to Dismiss or to Compel Arbitration (ECF No. 123); Defendants BlackRock, Inc. and BlackRock Alternative
Advisors' Motion to Dismiss ("BlackRock Defendants") (ECF No. 125); Defendant Cliffwater, LLC's Motion to
Dismiss (ECF No. 126); Defendants Philip Murphy, State of New Jersey Division of Investment ("DOI"), Jason
MacDonald, Christopher McDonough, Corey Amon, Dini Ajmani, Derrick Greene, George Helmy, and Matthew
Platkin's (collectively, the "State Defendants") Motion to Dismiss (ECF No. 128); Defendant Owl Rock Capital

Owl Rock argued that Plaintiff's RICO claim was time-barred and should be dismissed. (*See* Transcript of Oral Argument Oct. 28, 2022 ("Tr.") 99:23-111:9, ECF No. 196.) On December 23, 2022, the Court issued an Opinion and Order, among other relief, denied the entirety of Owl Rock's motion. (ECF Nos. 201, 202.)

Defendant Owl Rock brings the instant Motion for Partial Reconsideration of the Court's Opinion. (ECF No. 205)  Owl Rock asserts that BCA failed to bring Count Thirteen of the Amended Complaint, Aiding and Abetting Racketeering, N.J.S.A. 2C:41 2(c) and (d) ("NJ RICO" claim), against Owl Rock within the four-year statute of limitations. Owl Rock states that although the Court addressed the statute of limitations arguments raised by other defendants (*see* ECF No. 201 at 46-49), the Court did not address Owl Rock's unique defense as to the NJ RICO claim.[3] As a result, Owl Rock contends that the Court overlooked this issue and requests limited reconsideration and that the NJ RICO claim be dismissed with prejudice as to Owl Rock. BCA opposed Owl Rock's Motion. (ECF No. 214.)

## II.    LEGAL STANDARD

While the Federal Rules of Civil Procedure do not expressly authorize motions for reconsideration, Local Civil Rule 7.1(i) provides for such a review. *Dunn v. Reed Group, Inc.,* Civ. No. 08–1632, 2010 WL 174861, at *1 (D.N.J. Jan 13, 2010); *Est. of Harrison v. Trump Plaza Hotel & Casino,* No. CIV. 12-6683 RBK/KMW, 2015 WL 3754996, at *1 (D.N.J. June 16, 2015). Reconsideration "is an extraordinary remedy that is to be granted very sparingly." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 215 F.Supp.2d 482, 507 (D.N.J. 2002) (citations and internal quotations omitted).  This is because "[t]he standard of review involved in a motion for"

---

Corporation's Motion to Dismiss (ECF No. 129), and Defendant Samantha Rosenstock's Motion to Dismiss (ECF No. 130).

[3] Owl Rock raised this argument in its motion to dismiss. (ECF No. 129-1, at 11-12.)

reconsideration is "quite high . . . ."  *U.S. v. Jones*, 158 F.R.D. 309, 314 (D.N.J. 1994) (citation omitted).  To that end, "[t]he Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter." *Andreyko v. Sunrise Sr. Living, Inc.*, 993 F.Supp.2d 475, 478 (D.N.J. 2014) (citations omitted). Under Local Civil Rule 7.1(i), a party may seek reconsideration of an order or judgment by "setting forth concisely the matter or controlling decisions which the party believes the Judge has overlooked . . . ."  L. Civ. R. 7.1(i).

To prevail on a motion for reconsideration, the moving party must show "at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court" issued the order or judgment; "or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  *Max's Seafood Café by Lou Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted).  Whether to grant a motion for reconsideration is a matter within the Court's discretion, but it should only be granted where such facts or legal authority were indeed presented but overlooked. *See BeLong v. Raymond Int'l Inc.*, 622 F.2d 1135, 1140 (3d Cir. 1980), *overruled on other grounds by Croker v. Boeing Co.*, 662 F.2d 975 (3d Cir. 1981); *see also Williams v. Sullivan*, 818 F. Supp. 92, 93 (D.N.J. 1993); *Guille v. Johnson,* No. CV181472PGSZNQ, 2019 WL 6769021, at *1 (D.N.J. Dec. 12, 2019).

## III.   DISCUSSION

Owl Rock contends that reconsideration is warranted for four reasons: (1) the Court did not consider Owl Rock's statute of limitations defense to the NJ RICO claim; (2) based on the Court's finding that August 5, 2016, is the date the claim accrued for statute of limitations purposes, the claim is time-barred as to Owl Rock as a matter of law; (3) the relation-back doctrine does not apply under the law of this Circuit; and (4) it would be unjust to force Owl Rock to litigate

a claim that is time-barred. (ECF No. 205-1 at 6-8.)[4]

There are certain facts from the Amended Complaint that warrant mention in addition to Owl Rock's assertion that BCA repeatedly referenced Owl Rock in its original complaint as the purported employer of Timothy Walsh and recipient of a separate investment from DOI. (*See* ECF No. 1 ¶¶ 136-38, 153.) Plaintiff alleges that Defendant Timothy Walsh is a former member of Plaintiff BCA's Board of Advisors and is currently a Managing Director at Defendant Owl Rock Capital LP. (Am. Compl. ¶ 18.) The DOI "targeted" BlackRock through its former director, Defendant Walsh. (*Id*. ¶¶ 57- 59, 69, 82-102.)  Walsh was a close friend of McDonough and MacDonald from his time at DOI, where he supervised both. (*Id.* ¶ 57.) Walsh also knew Walthour and presented himself to Walthour as someone who was excited about the innovation that BCA had created and could advise BCA in its negotiations with the DOI. (*Id.*) Based on those representations, BCA added Walsh to its advisory board and involved him in every aspect of discussions with the DOI. (*Id.*) Walsh knew there was no chance of the DOI ever consummating the contemplated deal with BCA. (*Id.* ¶ 58.) Walsh fully understood, but concealed from and misrepresented to Walthour, that the DOI would work with BCA only as long as necessary to divert the FAIR program to an established "old-boy" Wall Street firm. (*Id.*) Walsh knew that BlackRock, with whom he also had a close relationship and had awarded billions in assets through, among others, account representative Donald Perrault, would be a natural fit to execute BCA's FAIR program and would value those who could assist it in securing that opportunity. (*Id.* ¶ 59.) Moreover, simultaneously with his work with BCA, Walsh was working as an undisclosed third-party marketer to the investment firm Owl Rock. (*Id.* ¶ 60.) By the first week of August, BCA had retained outside counsel; established an advisory board, which included defendant Walsh;

---

[4] For sake of clarity, the Court cites to the page number listed in the ECF header.

completed their CIO and COO searches and identified their preferred candidates; hired necessary

investment professionals; and identified and began discussions with industry vendors to provide

middle and back-office operations as well as due diligence on investments. (*Id.* ¶ 53.) Owl Rock

wanted New Jersey to be one of the firm's anchor investors and had secretly retained Walsh to

facilitate that investment, which was being "quarterbacked at DOI by Walsh's friend (and

housemate during this period) MacDonald." (*Id.*)  Plaintiff alleges that according to his LinkedIn

profile, in 2015, Walsh was employed by Owl Rock, although this was never publicly disclosed

until months later because it violated New Jersey law. ( Am. Compl. ¶ 60.) On August 5, 2016,

the SIC approved BlackRock's FAIR program, with an initial $500 million investment and

authority to invest an additional $500 million. (*Id.* ¶ 102.)  At the same meeting, the SIC approved

a $600 million commitment to Owl Rock, which had only been formed a few months earlier and

had completed the due diligence and approval processes in record time for a new fund. (*Id.*)  Less

than two weeks later, Owl Rock announced Walsh had been hired as a managing director

responsible for securing outside limited partner investments. (*Id.*)

Owl Rock's timeliness arguments were addressed in Owl Rock's moving and reply briefs

and at oral argument. (*See* ECF Nos. 129-1 at 11-12, 144 at 5-7; *see also* Tr.  99:23-111:9.) Under

these circumstances, the Court's consideration of these arguments is presumed. *See Eichorn,* 1999

WL 33471890, at *3.

Courts in this district have consistently held that "an argument is not deemed overlooked

simply because it is not directly addressed in a court's opinion." *Trustees of Int'l Union of*

*Operating Engineers Local 825 Welfare Fund v. Del. Valley Crane Rental, Inc.,* No. 17-cv-8567-

NLH-SAK, 2023 WL 112441, at *3 (D.N.J. Jan. 5, 2023) (denying reconsideration and holding

the court did not overlook arguments previously raised by the parties in briefing); *see also High 5*

*Games, LLC v. Marks,* No. 13-CV-07161-JMV-MF, 2019 WL 6828391, at \*4 (D.N.J. May 30, 2019) (same); *U.S. ex rel. Simpson v. Bayer Corp.,* No. 05-3895 (JLL)(JAD), 2015 WL 3618295, at \*2 (D.N.J. June 9, 2015) (same). Rather, arguments will be deemed considered if they were presented in written submissions and at oral argument. *See Eichorn v. AT&T Corp.,* No. CIV.A. 96- 3587 (MLC), 1999 WL 33471890, at \*3 (D.N.J. Aug. 23, 1999) ("The Court has already considered those arguments, as they were presented both in written submissions and at oral argument"); see also *Raritan Baykeeper, Inc. v. NL Industries, Inc.,* No. 09-4117 (MAS) (DEA), 2016 WL 7377104, at \*3 (D.N.J. Dec. 20, 2016) (denying reconsideration based on claim that Court overlooked argument where the argument was presented in Plaintiffs' Opposition [brief].)

The Court specifically addressed all timeliness arguments with respect to BCA's RICO claims  in a section of the Opinion titled "The State and Federal RICO claims are not Time Barred." (Opinion at 46 – 49.) There, the Court went through a detailed analysis of the RICO statute of limitations and the factual allegations supporting BCA's RICO claims. (*Id*.) The Court noted that "[u]ltimately, questions of accrual and timeliness are highly-fact specific, and generally not appropriate for dismissal at the pleadings stage." (*Id.* at 49.)

Owl Rock cites two factually distinguishable cases in which the courts granted reconsideration. In *Max's Seafood Café ex. Rel Lou-Ann, Inc. v. Quinteros,* the Third Circuit found that the lower court ignored key evidence as to when a party was incorporated and found this directly implicated its potential liability. 176 F.3d 669, 677-78 (3d Cir. 1999). In *Bowers v. Nat'l Collegiate Athletic Ass'n,* the Court reconsidered its prior holding because the defendants' internal rules with respect to athlete eligibility had changed between the time the complaint was filed and the motion for reconsideration, and the rules change stripped the plaintiff of standing to pursue some of his claims. 130 F.Supp.2d 610, 613-614 (D.N.J. 2001)

The Opinion stated that the statute of limitations inquiry requires the Court to "determine when plaintiffs should have known of the basis of their claims, which depends on whether [and when] they had sufficient information of possible wrongdoing to place them on inquiry notice or to excite storm warnings of culpable activity." (Opinion at 46) (quoting *Cetel v. Kirwan Financial Group, Inc.,* 460 F.3d at 507 (quoting *Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001).) Further, the Court noted that the Third Circuit follows the "injury discovery rule" as the governing standard for determining statute of limitations issues in civil RICO claims. (Opinion at 46 – 47) (quoting *Forbes v. Eagleson,* 228 F.3d 471, 484 (3d Cir. 2000).) This approach requires the court to "determine when the plaintiffs knew or should have known of their injury." *Prudential Insurance Co. v. United States Gypsum Co.,* 359 F.3d 226, 233 (3d Cir. 2004) (quoting *Forbes,* 228 F.3d at 484). "In addition to the injury, the plaintiffs must also have known or should have known of the source of their injury." *Id.* Nothing more is required to trigger the running of the four-year limitations period governing a civil RICO claim. *Id.*

Further, Defendants' contentions about what BCA might have known, or should have known, are insufficient to meet their high burden to establish a statute of limitations defense at the pleadings stage. *See Dimartino v. BMW of N. Am., LLC*, No. 15-8447 (WJM), 2016 WL 4260788, at *2 (D.N.J. Aug. 11, 2016) (determination of when a party should know he has been injured "is one of fact and best left to the fact-finder"); *Weiss v. First Unum Life Ins. Co.,* 482 F.3d 254 (3d Cir. 2007).

Further, New Jersey's RICO statute is treated co-extensively with its federal counterparts for timeliness purposes. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F. 3d 235, 245 (3d Cir. 2012); *Bank of Am. Corp.*, 153 F. Supp. 3d 831, 842 (W.D. Pa. 2015) (noting that the Third Circuit holds that "tolling inquiries are generally fact-intensive," and

10

that "reasonable diligence is a fact-specific inquiry"); *see also Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir. 1985) (finding that "statute of limitations is an affirmative defense, and the burden of establishing its applicability to a particular claim rests with the defendant.").

The Court determined that based on the facts within the Amended Complaint, a portion of which are repeated herein (*see supra* pp. 7 – 9), BCA's allegations were "sufficient to defeat dismissal based on the statute of limitations" at the pleadings stage. (*Id*. at 48.) As reconsideration is a matter within the Court's discretion that should only be granted where facts or legal authority were indeed presented but overlooked, the Court will deny Defendant's motion.

As to Owl Rock's assertion that it would be unjust to force Owl Rock to litigate a claim that is time-barred. The Court disagrees. Plaintiff has other claims against Owl Rock that survived the motion to dismiss, including aiding and abetting fraud, unfair competition, and civil conspiracy. Thus, Owl Rock will expend resources to defend the other remaining claims and thereby does not face an unjust circumstance.

## IV.   CONCLUSION

For the foregoing reasons, Owl Rock's Motion for Partial Reconsideration (ECF No. 205) of the Court's December 23, 2022 Opinion and Order (ECF Nos. 201, 202) is **DENIED**. An appropriate Order accompanies this Opinion.

**DATED**: October 18, 2023

JULIEN XAVIER NEALS
**United States District Judge**

11