UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BLUEPRINT CAPITAL ADVISORS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF NEW JERSEY, et al.,<br><br>Defendants. | Civil Action No. 20-7663 (JXN) (MAH)<br><br>OPINION |

**HAMMER, United States Magistrate Judge**

This matter comes before the Court by way of Plaintiff Blueprint Capital Advisors' ("BCA") objection to the Special Discovery Master's ("SDM") recommendation, D.E. 420, regarding three documents submitted for *in camera* review, which Defendants Jason MacDonald, Christopher McDonough, Corey Amon, Dini Ajmani, Derrick Green, George Helmy, and Matthew Platkin (together, "State Defendants") withheld based on executive privilege. SDM Order, May 8, 2025, D.E. 420-1, at 1; Pl.'s Notice of Objs., May 15, 2025, D.E. 422. The State Defendants filed their opposition to BCA's objection on June 13, 2025. State Defs.' Opp'n to Obj., D.E. 433. Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decided this matter without oral argument. For the reasons set forth below, BCA's objection to the SDM's Order, D.E. 422, is **OVERRULED**. The Special Discovery Master's Recommendation, D.E. 420, is adopted in full.

I.   **BACKGROUND**

As the Court writes primarily for the parties, who are well familiar with the background of this matter, the below summary is abbreviated and tailored to facts relevant to the instant dispute.

On April 17, 2024, the Court addressed a discovery dispute concerning the deliberative process privilege.  Order, D.E. 314.  The Court directed the State Defendants to serve a revised privilege log by April 26, 2024.  *Id.*  Each party was to submit up to ten documents for *in camera* review by May 2, 2024, and a letter outlining its position on the applicability of the deliberative process privilege by May 3, 2024.  *Id.*  The Court did not rule on the parties' disputes concerning the executive privilege and other discovery disputes at that time.  *Id.*  Instead, the Court directed the parties to submit a fulsome joint status report listing all unresolved discovery disputes, organized by party, with each item including a neutral description of the dispute, a summary of the meet-and-confer efforts to date, and the parties' respective positions on the usefulness of further discussion.  *Id.*

On May 2, 2024, both parties selected documents for *in camera* review, as per this Court's order.  The State Defendants chose the following documents: (1) SD0042983, (2) SD0044492, (3) SD0049329, (4) SD0054564, (5) SD0054595, (6) SD0059804, (7) SD0089791, (8) SD0089849, and (9) SD0107778.  Order, D.E. 318.  BCA selected the following documents for review: (1) SD0048636, (2) SD0050728, (3) SD0051755, (4) SD0086752, (5) SD0089427, (6) SD0106006, (7) SD0107799, (8) SD0107826, and (9) SD0107839.  Order, D.E. 319.  On May 10, 2024, the State Defendants filed a letter asserting that three of BCA's selected documents, SD0107799, SD0107839, and SD0107826, were "protected not only by the deliberative process privilege, but also the executive privilege, and in the case of

2

two documents [SD0107799 and SD0107839], the attorney/client privilege as well." Ltr. from State Defs., D.E. 328, at 1.  The State Defendants also planned to send to BCA's counsel a "clawback" letter regarding these three documents. *Id*. at 2.  The documents consisted of emails from Governor Phil Murphy to State Defendants Platkin, the Governor's then-Chief Counsel; Helmy, the Governor's then-Chief of Staff, and Kelley, the Governor's then-Deputy Chief of Staff for Economic Growth.  SDM Order, D.E. 420-1, at 3.

Given the abundance of discovery disputes, the Court appointed an SDM pursuant to Federal Rule of Civil Procedure 53(b)(1) "to address the complicated and voluminous privilege disputes between the parties[.]" Order Appointing SDM, Feb. 27, 2025, D.E. 402, at 2; *see generally* Order, January 28, 2025, D.E. 389; Order, Jan. 30, 2025, D.E. 391.  On February 7, 2025, the parties submitted a joint letter of their "respective positions regarding the appointment of the [SDM.]" Joint Letter, D.E. 396, at 1.  The Court considered both parties' proposals and appointed Judge Bariso as SDM.  Order Appointing SDM, D.E. 402, at 3.

On May 8, 2025, the SDM issued a Recommendation, concluding that SD0107799, SD0107839, and SD0107826 are protected by the executive privilege.  Order Upon Rec. of SDM, D.E. 420, at 1.  In his Memorandum of Recommendation, the SDM additionally found that SD0107799 and SD0107839 are protected by the attorney-client privilege.  Memo. of Rec. of SDM, D.E. 420-1, at 7.  On May 19, 2025, BCA objected to the SDM's Order.  *See* Obj., D.E. 422.

BCA argues the SDM applied the incorrect standard in deciding the State Defendants' executive privilege assertions.  Br. Objecting to SDM Order, May 22, 2025, D.E. 424, at 6.  BCA contends the SDM improperly utilized state, rather than exclusively federal, law in his analysis. *Id.* at 6-7.  Further, BCA argues the SDM prematurely determined the attorney-client privilege

3

protected two of the three documents. *Id.* at 9-10. In BCA's view, it should have had the opportunity to brief that specific issue prior to any ruling from the SDM. *Id.* at 10.

On June 13, 2025, the State Defendants responded to BCA's objection. The State Defendants contend the SDM properly applied federal law, thus applying the correct standard. State Defs.' Response, D.E. 433, at 2. Specifically, the State Defendants argue the SDM did not afford state law controlling weight but rather acknowledged "the policy considerations underlying state law." *Id.* at 2-3.

## II.  ANALYSIS

### A.  Legal Standard

Federal Rule of Civil Procedure 53 governs the Court's review of the SDM's orders. Under Rule 53(f), the Court reviews the SDM's findings of fact and conclusions of law de novo. Fed. R. Civ. P. 53(f)(3)-(4). In contrast, the Court reviews the SDM's procedural rulings for abuse of discretion. Fed. R. Civ. P. 53(f)(5); *see also IQVIA, Inc. v. Veeva Sys., Inc.*, No. 17-00177, 2024 WL 4914486, at *7 (D.N.J. March 30, 2024).

Here, the SDM made rulings on both the executive privilege and the attorney-client privilege. In the Third Circuit, whether a privilege applies is considered a question of fact, whereas defining the scope of that privilege is regarded as a question of law. *IQVIA,* 2024 WL 4914486, at *7 (quoting *TransWeb, LLC v. 3M Innovative Props. Co.*, No. 10-4413, 2012 WL 2878075, at *1 (D.N.J. July 13, 2012)).

Furthermore, a de novo review of the SDM's findings does not inherently require the submission of new evidence, particularly following evidentiary proceedings. *Id*. (quoting *Net2Phone, Inc. v. eBay, Inc.*, No. 06-2469, 2008 WL 8183817, at *4 (D.N.J. June 26, 2008)). In such cases, the Court need only conduct a de novo review of the decision itself, as the parties

4

have developed the existing record sufficiently. *Id.* at *4. A plain reading of Federal Rule of Civil Procedure 53 confirms this interpretation, as it requires only that the Court make a de novo determination based on the SDM's decision, not that it hold a de novo hearing. *Id.*

The phrase "de novo determination" signifies the reviewing court conducts an independent assessment of the matter, without giving any deference to the conclusions previously reached. *IQVIA*, 2024 WL 4914486, at *8. Nonetheless, this standard does not entitle a party to introduce new arguments at the reviewing stage. *Id.* Allowing litigants to raise arguments for the first time in objections to an SDM's recommendation undermines the efficiency of the process and effectively reduces the initial proceedings to a rehearsal. *Id.* (citing *Dunkin' Donuts Franchised Rests. LLC v. Mehta*, No. 07–0423, 2007 WL 2688710, at *1–2 (W.D. Pa. Sept. 10, 2007)). The Court will therefore review the findings and conclusions of the SDM accordingly.

### B. Discussion

The disputes before the Court are two-fold: (1) Whether the SDM prematurely recommended that the attorney-client privilege applied to two documents; and (2) Whether the SDM improperly applied state rather than federal privilege law. The Court will address each argument in turn.

#### 1. The SDM Applied the Correct Standard

BCA contends the SDM applied a standard "not recognized under federal law" when concluding that "disclosure would 'compromise the confidentiality upon which a Governor and his Office depend to ensure truthfulness, candor, and efficiency.'" Pl.'s Notice of Objs., D.E. 422, at 3. In particular, BCA argues that "[f]ederal courts have expressly rejected 'candor' in an executive's discussions as a 'legitimate' interest warranting application of the narrow privilege."

5

Br. Objecting to SDM Order, D.E. 424, at 8. Similarly, BCA also maintains that under federal law, "efficiency" is not a cognizable government interest sufficient to avoid disclosure. *Id.* at 9.

However, this argument lacks merit, as relevant case law supports the SDM's conclusions. "[A]ny information that is not privileged is discoverable if it is relevant to the action or reasonably calculated to lead to the discovery of admissible evidence." *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1207 (D.N.J. 1996) (citing Fed. R. Civ. P. 26(b)(1)). Federal Rule of Evidence 501, which governs privileges in federal court, states that federal common law applies unless the Constitution, a federal statute, or Supreme Court rules provide otherwise. *See id*. In actions brought under federal law, federal common law, not state law, determines privilege. *Id*. That said, there is no uniformity among federal courts regarding which privileges officials may assert in civil rights litigation. *Id* at 1208. In the absence of a comprehensive statutory framework, Congress left it to the courts to shape federal privilege law through individual decisions. *Id.* (citing *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987)). In making this determination, courts "may look to state law to determine what interests have inspired state privilege laws[,]" but it is not determinative. *Id*. Here, the SDM noted "[i]n some instances, particularly in civil rights litigation, federal courts may refer to state privilege law to better understand the policy interests at stake and the weight accorded to those interests by the state legislature." Memo. of Rec. of SDM, D.E. 420-1, at 5. The SDM, therefore, appropriately considered the applicable state law but ultimately gave precedence to federal law.

Not only was the SDM permitted to consider state law in making his determinations, but the state and federal standards are substantially similar, particularly in the balancing test both require. Federal application of executive privilege "requires a court to weigh the government's interest in ensuring the secrecy of the documents in question against the need of the adverse

6

party to obtain the discovery." *Id*. at 1209 (citing *G-69 v. Degnan*, 130 F.R.D. 326, 332 (D.N.J. 1990)). Courts commonly apply the following factors to perform this balancing test are: (1) whether releasing the information would discourage people from cooperating with the government; (2) the effect on individuals if others reveal their identities after they provide information; (3) whether disclosure would hinder honest internal evaluations and program improvement within the government; (4) whether the information is purely factual or includes opinions and analysis; (5) whether the party seeking discovery is currently or possibly facing criminal charges related to the matter; (6) whether the police have completed their investigation; (7) whether any internal disciplinary actions have or may occur as a result of the investigation; (8) whether the plaintiff's lawsuit is legitimate and filed in good faith; (9) whether the information can be obtained from other sources or through other discovery methods; and (10) how important the requested information is to the requesting party's case. *Carchietta v. Russo*, No. 11-7587, 2014 WL 1789459, at *6 (D.N.J. May 6, 2014) (citing *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987)); *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973). The final factor is particularly significant. *Carchietta*, 2014 WL 1789459, at *6. Additionally, the Third Circuit places additional emphasis on a narrowly construction of the executive privilege. *See United States v. O'Neill*, 619 F.2d 222, 230-31 (3d Cir. 1980) (noting that a "district court will be obliged to balance the need of the Commission against the concerns of the City, if they are found to be legitimate, because [e]xecutive [p]rivilege is, at most, a qualified one"); *Redland Soccer Club, Inc. v. Dep't of the Army*, 55 F.3d 827, 856 (3d Cir. 1995) ("[T]he deliberative process privilege, like other executive privileges, should be narrowly construed.").

Like Third Circuit caselaw, New Jersey law employs a balancing test. *See Wilson v. Brown*, 962 A.2d 1122, 1133 (N.J. Super. Ct. App. Div. 2009) (noting that when a court reviews

an assertion of privilege, the court must carefully balance the importance of that privilege and the executive's decision to invoke it). Furthermore, New Jersey law recognizes executive privilege as a qualified, rather than absolute, doctrine. In New Jersey, plaintiffs requesting access to privileged materials must demonstrate a specific and compelling need for the information. *See O'Boyle v. Borough of Longport*, 94 A.3d 299, 316 (N.J. 2014) (quoting *Wilson*, 962 A.2d at 1138). New Jersey courts use a three-part analysis to determine whether a party has satisfied this burden, while also balancing the rights of the party invoking privilege: (1) whether the information can be obtained through other means; (2) the extent to which the party would suffer harm if the information remains undisclosed; and (3) the potential impact disclosure might have on the agency's investigation. *McClain v. Coll. Hosp.*, 492 A.2d 991, 993 (N.J. 1985).

  The SDM determined that, as the highest-ranking official in New Jersey, the Governor's communications with his Chief Counsel and members of his office fall squarely within the scope of executive privilege. SDM Order, D.E. 420-1, at 7. The SDM then correctly noted the Governor's role does not, by itself, protect the documents from being disclosed. *Id*. He appropriately considered BCA's interests and weighed them against the level of protection warranted for governmental communications. *Id*. After conducting an *in camera* review, the SDM concluded that the requested communications "do not bear upon, nor are they probative of, any claim or defense asserted by the Parties. Rather, the privileged communications are of minimal, if any, relevance to the allegations at issue." *Id*. He further determined that disclosing the documents would undermine the confidentiality of government communications, an interest the Third Circuit has recognized as particularly significant. *See O'Neill*, 619 F.2d at 230-31. Accordingly, the Court finds that the SDM did not err in determining that the executive privilege

8

applied to the three documents at issue as he appropriately applied the federal law of privilege in making such determination.[1]

### 2. Attorney-Client Privilege

BCA's final objection to the order is that the SDM rendered a ruling on attorney-client privilege prematurely. Pl.'s Notice of Objs., D.E. 422, at 3. The SDM decided that two of the emails between the Governor and his chief counsel, SD0107799 and SD0107839, were protected by the attorney-client privilege. BCA argues that the issue of attorney-client privilege "was not properly before the SDM and has not been fully briefed." *Id*.

BCA's argument is unavailing for several reasons. First, the SDM found that SD0107799 and SD0107839 were also protected by the executive privilege. Memo. of Rec. of SDM, D.E. 420-1, at 7. Specifically, the SDM concluded that:

> Although the present dispute implicates claims of executive privilege, the SD also assert that SD0107799 and SD0107839 are independently protected by the attorney-client privilege. Based on the SDM's *in camera* review, it is evident that the Governor's communications to his Chief Counsel were plainly made for the purpose of obtaining legal advice. That SD0107839 is a communication from the Governor to both his Chief Counsel and Chief of Staff does not waive this privilege. As such, SD0107799 and SD0107839 are protected from disclosure under the attorney-client privilege.

---

[1] BCA asserts that "the executive privilege is unavailable where, as here, BCA's claims are based on allegations of government wrongdoing." Br. Objecting to SDM Order, D.E. 424, at 2. That argument is misplaced. BCA seems to conflate the executive privilege with the deliberative process privilege. They are distinct privileges, and the cases on which BCA relies all concern the deliberative process privilege. *See, e.g.*, *Scott v. Bd. of Educ. of City of E. Orange*, 219 F.R.D. 333 (D.N.J. 2004); *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997). As the SDM determined that the three documents were protected by the executive privilege, the government wrongdoing standard does not apply. Moreover, the Court in *In re Sealed Case* specifically described the presidential communications privilege--an executive privilege--as a more robust privilege than the deliberative process privilege, because government wrongdoing, by itself, is insufficient to defeat the presidential communications privilege. *In re Sealed Case*, 121 F.3d at 746.

*Id.* Thus, BCA cannot claim any prejudice as the SDM found these two documents were also protected by the executive privilege. Second, the Court appointed the SDM to "address the complicated and voluminous privilege disputes between the parties[.]" Order Appointing SDM, D.E. 402, at 2. The SDM was granted the authority to "make findings of fact and conclusions of law with respect to the matters presented by the parties[.]" *Id.* at 5. As the Third Circuit has explained, "'the applicability of a privilege is a factual question' and the determination of 'the scope of the privilege is a question of law.'" *Katz v. AT&T Corp.*, 191 F.R.D. 433, 436 (E.D. Pa. 2000) (quoting *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 124 (3d Cir. 1986)). The SDM had the benefit of reviewing the two emails *in camera*. Accordingly, it was well within the SDM's discretion to determine that attorney-client privilege, an absolute privilege, applied to the disputed documents. For these reasons, the Court cannot conclude that the SDM applied the attorney-client privilege prematurely.

### III.   CONCLUSION

For the foregoing reasons, BCA's objection to the SDM's Order, D.E. 422, is **OVERRULED**. The Special Discovery Master's Recommendation, D.E. 420, is adopted in full.

An appropriate Order will follow.

*s/ Michael A. Hammer*
**United States Magistrate Judge**

**Dated: September 22, 2025**