**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| BLUEPRINT CAPITAL ADVISORS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF NEW JERSEY, *et al.*, <br><br> Defendants. | Civil Action No. 20-07663 (JXN)(MAH) <br><br> **OPINION** |

**NEALS**, District Judge

Before the Court is Plaintiff Blueprint Capital Advisors, LLC's ("BCA") appeal (ECF No. 486) of Magistrate Judge Michael A. Hammer's ("Judge Hammer") Opinion and Order dated September 22, 2025 (ECF Nos. 479, 480), which adopted the Special Discovery Master's Recommendation dated May 8, 2025 (ECF No. 420). Defendants Jason MacDonald, Christopher McDonough, Corey Amon, Dini Ajmani, Derrick Green, George Helmy, and Matthew Platkin (collectively "State Defendants") opposed the appeal (ECF No. 490), and BCA replied in further support (ECF No. 498). The Court has carefully reviewed the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Judge Hammer's Opinion and Order are **AFFIRMED**, and BCA's appeal is **DENIED**.

I.  **BACKGROUND**[1]

---

[1] The Court assumes the parties' familiarity with the facts and procedural history of this matter and recounts those facts necessary to this appeal. Judge Hammer's September 2025 Opinion provides a thorough recitation of the background and the parties' arguments regarding the underlying dispute. *See Blueprint Cap. Advisors, LLC v. New Jersey*, No. 20-7663, 2025 WL 2693971 (D.N.J. Sept. 22, 2025).

This matter centers on a discovery dispute concerning the deliberative process privilege. *See Blueprint Cap. Advisors*, 2025 WL 2693971, at \*1. On April 17, 2024, Judge Hammer directed the State Defendants to serve a revised privilege log by April 26, 2024. *Id.* Each party was to submit up to ten documents for *in camera* review by May 2, 2024, and a letter outlining its position on the applicability of the deliberative process privilege by May 3, 2024. *Id.* On May 10, 2024, the State Defendants filed a letter asserting that three of BCA's selected documents, SD0107799, SD0107839, and SD0107826, were "protected not only by the deliberative process privilege, but also the executive privilege" ("Withheld Documents"), comprising emails from former Governor Phil Murphy ("Governor Murphy") to State Defendants Platkin,[2] Helmy,[3] and Kelley[4] (*See* SDM Recommendation ("Recommendation") at 3, ECF No. 420-1). *Id.* The State Defendants contend that the Withheld Documents are protected from disclosure on executive privilege grounds and, in the case of two of the Withheld Documents, by the attorney-client privilege as well. (*See* Defs.' Opp'n at 2–3, ECF No. 490.) BCA seeks disclosure of the Withheld Documents, asserting that the State Defendants' invocation of a blanket executive privilege was improper. (*See* Pl.'s Appeal Br. at 1-2, ECF No. 486-1.)

On May 8, 2025, after *in camera* review of the Withheld Documents, the Special Discovery Master ("SDM"), who was appointed "to address the complicated and voluminous privilege disputes between the parties," (Order Appointing SDM at 2, ECF No. 402), concluded that the Withheld Documents are protected by the executive privilege. (*See* Recommendation at 8.) The SDM also noted that two of the Withheld Documents involved communications "made for the purpose of obtaining legal advice" and therefore further protected by the attorney-client privilege.

---

[2] Governor Murphy's then-Chief Counsel.

[3] Governor Murphy's then-Chief of Staff.

[4] Governor Murphy's then-Deputy Chief of Staff for Economic Growth.

(*Id*. at 7.) On May 22, 2025, BCA objected to the SDM's Recommendation. (Pl.'s Obj., ECF No. 424.)

On September 22, 2025, Judge Hammer adopted the Recommendation in full, finding that the SDM "appropriately applied the federal law of privilege" in determining that the executive privilege applies to the Withheld Documents, *Blueprint Cap. Advisors*, 2025 WL 2693971, at *4, and agreeing with the SDM's remarks regarding the attorney-client privilege. *Id*. at 5. On October 6, 2025, BCA appealed Judge Hammer's Order (Pl.'s Appeal, ECF No. 486). The State Defendants opposed the appeal (Defs.' Opp'n, ECF No. 490), and BCA replied in further support (Pl.'s Reply, ECF No. 498).

## II.    LEGAL STANDARD

A United States Magistrate Judge may hear and determine any non-dispositive pretrial matter pending before the Court. 28 U.S.C. § 636(b)(1)(A). A district court will only reverse a magistrate judge's decision if it is contrary to law or clearly erroneous. *Id*.; *see also* Fed. R. Civ. P. 72(a). "The party filing the notice of appeal bears the burden of demonstrating that the magistrate judge's decision was clearly erroneous or contrary to law." *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004) (citation and internal quotations omitted).

A factual finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573(1985) (internal quotations and citation omitted). However, a "district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." *Andrews v. Goodyear Tire & Rubber Co.*, Inc., 191 F.R.D. 59, 68 (D.N.J. 2000) (citation omitted). Moreover, the district court may not consider any

3

evidence that was not presented to the magistrate judge. *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 92 (3d Cir. 1992).

Alternatively, a district court will conduct a *de novo* review of a magistrate judge's legal conclusions. *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 214 (D.N.J. 1997) (citing *Haines*, 975 F.2d at 91). "A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied the applicable law." *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (citation omitted).

"Where the appeal seeks review of a matter within the exclusive authority of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the abuse of discretion standard, may be applied." *Experian Info. Sols., Inc. v. List Servs. Direct, Inc.*, No. 15-3271, 2018 WL 3993449, at *3 (D.N.J. Aug. 21, 2018); *see also Kresefsky v. Panasonic Communications and Systems Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996) ("Where, as here, the magistrate has ruled on a non-dispositive matter such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion."); 12 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 3069 (stating that "many matters such as discovery scheduling or disputes might better be characterized as suitable for an abuse-of-discretion analysis.")

Abuse of discretion arises "when the judicial action is arbitrary, fanciful[,] or unreasonable," meaning "no reasonable [person] would take the view adopted by the trial court." *Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp.*, 540 F.2d 102, 115 (3d Cir. 1976). If reasonable people "could differ as to the propriety of the action," that action is not an abuse of discretion. *Id*. Further, an abuse of discretion occurs when a "material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." *Sabinsa Corp. v.*

4

*HerbaKraft, Inc.*, No. 14-4738, 2020 WL 1503061, at \*5 (D.N.J. Mar. 30, 2020) (quoting *V. Mane Fils S.A. v. Int'l Flavors & Fragrances Inc.*, No. 06-2304, 2008 WL 4606313, at \*3 (D.N.J. Oct. 16, 2008)).

## III.    ANALYSIS

BCA asserts Judge Hammer erred in his conclusion that "as the highest-ranking official in New Jersey, the Governor's communications with his Chief Counsel and members of his office fall squarely within the scope of executive privilege." (Pl.'s Appeal Br. at 16.) BCA argues Judge Hammer should instead have reviewed the substance of the Withheld Documents to assess whether there existed "any potential particularized harm to the government from disclosure" before balancing the interests of the executive against those of BCA. (*Id*. at 19.) BCA further argues that Judge Hammer "erroneously determined that the government's generalized interest in confidentiality is sufficient to prevent disclosure," in contradiction of Supreme Court and Third Circuit precedent. (*Id*. at 5.) BCA additionally seeks reversal of Judge Hammer's affirmation of the SDM's determination that two of the Withheld Documents were also protected by the attorney-client privilege because this issue was "neither referred to the SDM for resolution nor briefed by the parties." (*Id*. at 26.)

Because BCA's appeal seeks review of Judge Hammer's adoption of the Recommendation in full, finding that the SDM "appropriately applied the federal law of privilege," the Court will conduct a *de novo* review of Judge Hammer's legal conclusions. *Lithuanian Commerce Corp.*, 177 F.R.D. at 214. Specifically, whether a misinterpretation or misapplication of the applicable law occurred. *Pharm. Sales*, 106 F. Supp. 2d at 764 (citation omitted).

### A. Judge Hammer Correctly Interpreted and Applied the Law in Affirming the SDM's Findings on Executive Privilege

Judge Hammer, reviewing the SDM's decision *de novo*, outlined the disputes as two-fold: (1) Whether the SDM prematurely recommended that the attorney-client privilege applied to two documents; and (2) Whether the SDM improperly applied state rather than federal privilege law.

As an initial matter, BCA incorrectly asserts that Judge Hammer concluded that "all communications between the Governor and his staff, regardless of their substance, are *per se* privileged." (Pl.'s Appeal Br. at 17.) Rather, Judge Hammer rejected the notion that all gubernatorial communications are automatically privileged and explicitly agreed with the SDM's conclusion that "the Governor's role does not, by itself, protect the documents from being disclosed." *Blueprint Cap. Advisors*, 2025 WL 2693971, at *4. Moreover, Judge Hammer considered the importance of ensuring candid discussions between the Governor and his Chief Counsel, and high-level officials as one factor among several in a balancing test supplied by established precedent. *See id.* at *3 (discussing the ten factors commonly examined in determining whether the executive privilege prohibits disclosure) (citing *Carchietta v. Russo*, No. 11-7587, 2014 WL 1789459, at *6 (D.N.J. May 6, 2014) "The application of a privilege in federal court is governed by Fed. R. Evid. 501, which provides that in federal question cases, the federal common law of privilege applies rather than the state law of privilege.") (citation omitted) "A federal court sitting in a non-diversity case may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state." *Torres v. Kuzniasz*, 936 F.Supp. 1201, 1207–08 (D.N.J. 1996). The executive privilege encompasses military and state secrets, *United States v. Reynolds*, 345 U.S. 1 (1953), and the deliberative process of high executive officials. *United States v. O'Neill,* 619 F.2d 222, 228–29 (3d Cir. 1980) (citing *United States v. Nixon,* 418 U.S. 683 (1974)).

BCA argues that the SDM applied the incorrect standard in deciding the State Defendants' executive privilege assertions by improperly utilizing state, rather than exclusively federal, law in his analysis. (*See* Pl.'s Obj. at 6–7.) Further, BCA contends that Judge Hammer should have conducted a threshold assessment examining whether, based on the substance of the Withheld Documents, disclosure would "seriously harm government operations." (Pl.'s Appeal Br. at 15.) In *O'Neill,* on which BCA relies, the Third Circuit neither conducted nor alluded to such a threshold analysis. *See O'Neill,* 619 F.2d 222. BCA also cites *Preston v. Malcolm,* No. 09-3714, 2009 WL 4796797 (D.N.J. Dec. 8, 2009), which involved the "law enforcement privilege" rather than the executive privilege as applied to the highest-ranking executive official. *See id*. at *20. Although the Court in *Preston* stated that the "privilege is designed to protect documents and information whose disclosure would seriously harm the operation of government," this was a comment about the purpose of privilege broadly rather than a threshold requirement, and the Court ultimately conducted a multi-factor balancing test wherein "particularized harm to governmental processes" was a single factor considered among many. *Id.* at *6-8.

BCA also takes the position, for the first time, that the deliberative process privilege is synonymous with the form of executive privilege at hand. (Pl.'s Appeal Br. at 19.) The Court disagrees. While the deliberative process privilege is a *type* of executive privilege, *see Redland Soccer Club, Inc. v. Dep't of the Army,* 55 F.3d 827, 856 (3d Cir. 1995) ("[T]he deliberative process privilege, like other executive privileges, should be narrowly construed."), the deliberative process privilege "applies to decisionmaking of executive officials generally, the other specifically to decisionmaking of the President." *In re Sealed Case*, 121 F.3d 729, 745 (1997). The variety of executive privilege at hand is "analogous to the . . . privilege of the President, which is 'fundamental to the operation of government and inextricably rooted in the separation of powers.'"

*See Nero v. Hyland*, 76 N.J. 213, 225, (1978) (discussing the executive privilege as applied to the office of the Governor under state law) (quoting *United States v. Nixon*, 418 U.S. 683, 708, 94 S. Ct. 3090, 3107, 41 L. Ed. 2d 1039, 1064 (1974)). Accordingly, Judge Hammer did not err in concluding that the deliberative process's government wrongdoing exception does not apply to this type of executive privilege.

Finally, BCA asserts that "bare confidentiality concerns" are an insufficient basis to prevent disclosure. (Pl.'s Appeal Br. at 24.) Even assuming BCA's assertion to be accurate, Judge Hammer did not rely on bare assertions of generalized confidentiality in affirming the SDM's Recommendation. Instead, Judge Hammer considered the importance of ensuring confidential high-level executive conversations as a single factor among several, before concluding that the SDM "appropriately considered BCA's interests and weighed them against the level of protection warranted for governmental communications." *Blueprint Cap. Advisors*, 2025 WL 2693971, at *4. Crucially, this analysis followed *in camera* review of the substance of the Withheld Documents, after which the SDM concluded that the documents "do not bear upon, nor are they probative of, any claim or defense asserted by the Parties" and "are of minimal, if any, relevance to the allegations at issue." *Id*. at *4. Judge Hammer did not, as BCA contends, apply blanket protection to the documents based on non-specific confidentiality concerns, but rather "weigh[ed] the government's interest in ensuring the secrecy of the documents in question against the need of the adverse party to obtain the discovery." *Id.* at *3 (quoting *Torres*, 936 F. Supp. at 1209 (citing *G-69 v. Degnan*, 130 F.R.D. 326, 332 (D.N.J. 1990)).

A ruling is clearly erroneous where, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson*, 470 U.S. at 573 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364,

395 (1948)). "A ruling is 'contrary to law' when the magistrate judge has misinterpreted or misapplied the applicable law." *Romero v. Ahsan*, No. 13-7695, 2015 WL 5455838, at *3 (D.N.J. Sept. 16, 2015) (citing *Pharm. Sales*, 106 F. Supp. 2d at 764); *see also Allen v. Banner Life Ins. Co.,* 340 F.R.D. 232, 236 (D.N.J. 2022).

As the filing party, BCA bears the burden of demonstrating that Judge Hammer's decisions were clearly erroneous, an abuse of discretion, or contrary to law. *Supernus Pharms., Inc. v. Actavis, Inc.*, No. 13-4740, 2014 WL 654594, at *1 (D.N.J. Feb. 20, 2014) (citing *Montana v. Cty. of Cape May Bd. of Freeholders*, No. 09-0755, 2013 WL 5724486, at *1 (D.N.J. Oct. 18, 2013)). "Unless that burden is met, the magistrate judge's findings should not be rejected even if the district court could have decided the matter differently." *Evans v. Emp. Ben. Plan*, No. 03-4915, 2007 WL 77325, at *1 (D.N.J. Jan. 8, 2007) (citing *Andrews*, 191 F.R.D. at 68 ("A district judge's 'simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review.'")); *Toth v. Alice Pearl, Inc.*, 158 F.R.D. 47, 50 (D.N.J. 1994); *Allen,* 340 F.R.D. at 237. Here, BCA has not met the required burden.

## B. The Court's Discussion of the Attorney-Client Privilege is Non-Binding Dicta

BCA takes further issue with the fact that Judge Hammer purportedly "affirmed the SDM's determination that two of the three [Withheld Documents] . . . were protected by the attorney-client privilege," despite the fact that the attorney-client privilege issue was "neither referred to the SDM for resolution nor briefed by the parties." (Pl.'s Appeal Br. at 26.) This argument ignores the fact that executive privilege alone was sufficient to dispose of the dispute with respect to all three Withheld Documents. The Court's discussion of the attorney-client privilege was, by definition, non-dispositive *obiter dicta* and served the purpose of informing the parties of the Court's present perspective on the question of attorney-client privilege as applied to two of the

9

Withheld Documents, though BCA suffered no harm as a result thereof. *See United States v. Warren*, 338 F.3d 258, 265 (3d Cir. 2003) (defining "classic *obiter dicta*" as "statement[s] of law in [an] opinion which could not logically be a major premise of the selected facts of the decision.") (internal quotation marks omitted) (alteration in original).

Accordingly, the Court affirms Judge Hammer's September 22, 2025 Opinion and Order.

## IV.   **CONCLUSION**

For the foregoing reasons, BCA's appeal (ECF No. 486) is **DENIED**, and Judge Hammer's September 22, 2025 Opinion and Order (ECF Nos. 479, 480) are **AFFIRMED**. An appropriate Order accompanies this Opinion.

**DATED: 5/13/2026**

_____
**JULIEN XAVIER NEALS**
**United States District Judge**

10